Grace KERN, Appellant,

v.

Ralph C. GRANQUIST, District Director of Internal Revenue of the United States for the District of Oregon, Appellee.

No. 17159.

United States Court of Appeals
Ninth Circuit.
May 31, 1961.

————◆————

Carl E. Davidson and Charles P. Duffy, Portland, Or., for appellant.

Louis F. Oberdorfer, Asst. U. S. Atty. Gen., Lee A. Jackson, Harry Baum, Michael I. Smith, and Carolyn Just, Attys., Dept. of Justice, Washington, D. C., and C. E. Luckey, U. S. Atty., and Edward J. Georgeff, Asst. U. S. Atty., Portland, Or., for appellee.

Before BARNES, HAMLIN and MERRILL, Circuit Judges.

BARNES, Circuit Judge.

This is an appeal from a judgment of the United States District Court for the District of Oregon, refusing to grant taxpayer an income tax refund for the year 1953. Jurisdiction below rested on 28 U.S.C. § 1346. This court has jurisdiction on the appeal. 28 U.S.C. § 1291.

The sole issue before us is the amount of gain realized by appellant upon the sale of her residence on July 27, 1953, for the sum of $325,000. She entered into a written cost-plus contract to construct a new residence on April 1, 1954. The eighteen months period which is here of importance expired January 27, 1955. Appellant "used" her new residence prior to that date, but only $131,-099.31 worth of work was performed to and including that date, while $149,-742.46 was the cost of work performed after that date, out of the total cost of $280,841.77.

In appellant's original 1953 income tax return, she had estimated the probable cost of her new house at $115,000, and paid the tax on a taxable gain of $209,-567.50. In her amended income tax return for 1953, she used the actual construction cost figure hereinabove mentioned, computed her taxable gain at $43,725.73, and sued for the alleged overpayment of taxes in the amount of $51,-829.86. The Commissioner allowed as her cost only the amount *paid* for work actually performed within the eighteen month period.

In filing her amended return, appellant maintained:

"* * * that since the contract was entered into within the 18 month period and since she was actually occupying the house within the period, all construction costs were incurred within the period since she was under obligation to fulfill her part of the contract even though the actual construction cost of the house was not determinable at that time."

In ruling against appellant, the trial judge stated:

"My sympathies are all with the plaintiff in this case. In equity and good conscience she should be entitled to prevail. However, her right of recovery is based on the statute and regulations in question and under those I can find no theory of recovery." [185 F.Supp. 774].

This court feels as did the trial judge, that this is an example of inequities that frequently exist in income tax laws and regulations when any line is drawn, before which an exemption exists and after which it does not. However, any change in the law must come through legislative and not judicial action. We cannot fall into the error of judicial legislation.

The statute involved reads in pertinent part:

Internal Revenue Code of 1939, Section 112 (26 U.S.C.1952 ed., § 112):

"(n) *Gain from sale or exchange of residence.*

"(1) *Nonrecognition of gain.* If property (hereinafter in this subsection called 'old residence') used by the taxpayer as his principal residence is sold by him and, within a ·period beginning one year prior to the date of such sale and ending one year after such date, property (hereinafter in this subsection called 'new residence') is purchased and used by the taxpayer as his principal residence, gain (if any) from such sale shall be recognized *only to the extent* that the taxpayer's selling price of the old residence exceeds the taxpayer's cost of purchasing the new residence.

"(2) *Rules for application of subsection.* For the purposes of this subsection:

\*    \*    \*    \*    \*    \*

"(D) A residence any part of which was constructed or reconstructed by the taxpayer shall be considered as purchased by the taxpayer. In determining the taxpayer's cost of purchasing a residence, there shall be included only so much of his cost as is attributable to the \* \* \* construction \* \* and improvements *made* which are properly chargeable to capital account, during the period specified in paragraph (1).

\*    \*    \*    \*    \*    \*

"(F) If the taxpayer, during the period described in paragraph (1), purchases more than one residence which is used by him as his principal residence at some time within one year after the date of the sale of the old residence, only the last of such residences so used by him after the date of such sale shall constitute

the new residence. If within the one year referred to in the preceding sentence property used by the taxpayer as his principal residence is destroyed, stolen, seized, requisitioned, or condemned, or is sold or exchanged under threat or imminence thereof, then for the purposes of the preceding sentence such one year shall be considered as ending with the date of such destruction, theft, seizure, requisition, condemnation, sale, or exchange.

"(G) In the case of a new residence the construction of which was commenced by the taxpayer prior to the expiration of one year after the date of the sale of the old residence, the period specified in paragraph (1) and the one year referred to in subparagraph (F) of this paragraph, shall be considered as including a period of 18 months beginning with the date of the sale of the old residence." (Emphasis added.)

Treasury Regulation 118, section 29, 112(n) 1(b) (5) provides:

"The taxpayer's cost of purchasing the new residence includes only so much of such cost as is attributable to acquisition, construction, reconstruction, or improvements *made* within the two year or 30 months period of time, as the case may be." (Emphasis added.)

The italicizing of the word "made" is because of the emphasis placed on that by the trial judge, amplified in his opinion that it was "the most important word used in the statute."

It seems to us that at least one logical interpretation of the statute is to read the phrase following the word "made"—namely: "which are properly chargeable to capital account," as modifying only the word "improvements," and not modifying "acquisition, construction, [and] reconstruction." "Improvements" might or might not be properly chargeable to capital account—dependent upon their

nature [1]—but the cost of acquisition and construction almost certainly would be properly chargeable to capital account. "Recontruction" might conceivably not be but in all probability would also be chargeable to capital account.

■■ However logical we may think our interpretation to be, it was not the interpretation placed on the statute by the government in its Regulations, as we have seen above (Treas.Reg. 118 § 29, 112(n) 1(b) (5)), and this is entitled to weight in our consideration of the matter. Diamond v. Sturr, 2 Cir., 1955, 221 F.2d 264. Nor did the respective Houses of Congress, and their joint committee, agree with us in considering the meaning of this legislation. As the trial judge points out:

"The supplemental report of the Senate Finance Committee, S.Rep. 781, 82d Cong., 1st Sess., shows the Committee interpreted the language of the statute as follows:

" 'This section of the bill (referring to subsection (g)) as passed by the House included in the taxpayer's cost of purchasing the new residence only so much of the cost as is attributable to acquisition, construction, reconstruction or improvements made within the two year period of time in which the purchase of the new residence must be made in order to have gain not recognized under the amendment and which is properly chargeable to capital account rather than to current expense.' "

The House of Representatives explains its understanding of the language as follows:

"The words 'taxpayer's cost of purchasing the new residence' also include such indebtedness to which the property purchased is subject at the time of purchase whether or not assumed by the taxpayer (including purchase-money mortgages, etc.) and the face amount of any liabilities of the taxpayer which are part of the consideration for the purchase; *but include only so much of the cost as is attributable to* acquisition, *construction*, reconstruction, or improvements *made within the 2-year period of time in which the purchase of the new residence must be made in order to have gain not recognized under this subsection* and which is properly chargeable to capital account rather than to current expense." (Emphasis added.) H. Rep. 586, 82d Cong., 1st Sess., p. 110 (1951–2 Cum.Bull. 357, 436–437).

One Conference Committee Report states (H.Rep. 1179, 82d Cong., 1st Sess.):

"If the taxpayer commences construction of the new residence more than one year prior to the date of the sale of the old residence, in determining the taxpayer's cost of building the new residence there will be included only so much of the cost as is attributable to the construction made during the period beginning one year prior to the date of the sale of the old residence and ending 18 months after such sale."

Another Conference Committee report reads (H.Conf.Rep. 1213, 82d Cong., 1st Sess., p. 76 (1951–2 Cum.Bull. 622, 629)):

" * * * in determining the taxpayer's cost of building the new residence there will be included only so

---

1. "An improvement under our land system does not mean a general enhancement of the value of the tract from the occupant's operation. It has a more limited meaning * * *." Simpson v. Robinson, 37 Ark. 132, 137.

"A valuable addition made to property * * * or an amelioration in its condition, amounting to more than mere repairs or replacement of waste, costing labor or capital, and intended to enhance its value, beauty, or utility * * *." Black's Law Dictionary, Fourth Edition, p. 890.

"Improvements" is "a term used in leases, of doubtful meaning * * * when contained in any document, its meaning is generally explained by other words." Black's, supra at 891.

much of the cost as is attributable to the construction made during the period beginning 1 year prior to the date of the sale of the old residence and ending 18 months after such date."

See also Summary of the Provisions of the Rev.Act of 1951 (H.Rep. 4473, October 1951, p. 29).

We can only conclude, as did the trial court, that the Congress intended to permit the taxpayer to obtain the benefit, taxwise, only of so much of the cost of construction of, or improvements to, a new house as the taxpayer *had constructed and used* within the eighteen month period herein applicable. We cannot in good conscience rewrite the statute as though it included the words "contractual liabilities incurred during the 18 months period." The desire of the Congress to provide finality to the deferment provisions of Section 112(n) must regretfully be respected. Any relief to taxpayers must lie with the legislative rather than the judicial branch of the government.

The judgment is affirmed.

HAMLIN, Circuit Judge (dissenting).

I respectfully dissent. While my brothers agree that the result to the taxpayer is "an example of inequities" in income tax laws, they do not feel able to reverse the case. The statute and the regulations all use the word "made" as the critical word. In the context in which this word is used, it is ambiguous.

In this case the taxpayer had, within the time permitted by the statute, executed a contract to erect a new residence according to plans and specifications at a price of cost plus ten percent. She had incurred an obligation to pay this sum and was legally liable therefor. She had done all that she could to make a completed transaction. The contract provided that the construction be completed within the allowable statutory period. She had moved into the new residence within the allowable statutory period. However, through no fault of hers and solely because the contractor and subcontractor could not obtain and install the required interior woodwork on time, the job was not finished until after the 18 months period.

To reach their conclusion my brothers add words to the statute by construing the ambiguous word "made" to mean "had constructed and used."

In another place in the opinion it is stated that "one logical interpretation of the statute is to read the phrase following the word 'made'—namely: 'which are properly chargeable to capital account,' as modifying only the word 'improvements,' and not modifying 'acquisition, construction, [and] reconstruction.'" Such an interpretation would result in a reversal, but it is rejected in the opinion of the court because it "was not the interpretation placed on the statute by the government in its Regulations * * *."

Nor do I think the legislative history as cited in the opinion is persuasive of the majority position. It is merely a restatement in different words of the proposed statute and to me is just as consistent with a reversal in this case as with an affirmance.

This was a statute designed to help the taxpayer by postponing taxes upon the sale of residences. It was passed because it is universally known that by reason of inflation the cost and selling price of all residences have increased substantially. I would construe the statute to provide the relief intended in cases such as this one where the taxpayer had incurred definite and final liabilities by a binding legal contract which by its terms is to be performed within the 18 months period and where by no fault of the taxpayer the construction is not completed within that time.

I do not believe that such a construction of the statute would be "judicial legislation" but that it would be such a construction of the statute as Congress intended.

I would reverse the decision of the district court.