WILLIAM DUNNEGAN AND JACQUELINE FISHER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Dunnegan v. Commissioner
Docket No. 8428-94
United States Tax Court
T.C. Memo 1995-167; 1995 Tax Ct. Memo LEXIS 159; 69 T.C.M. (CCH) 2391; April 11, 1995, Filed Decision will be entered under Rule 155. In 1985, P and his parents (Fs) acquired a rental property as tenants in common. As part of the purchase price, P and Fs incurred a $ 111,750 debt for which they were jointly and severally liable. On Aug. 30, 1988, P sold his principal residence for an adjusted sales price of $ 214,000. In Feb. 1990, P gave his interest in the rental property to Fs; P and Fs remained jointly and severally liable for the debt. On July 31, 1990, P repurchased the rental property for $ 215,000 as his new principal residence under sec. 1034(a), I.R.C. P agreed with Fs to assume the $ 101,125 balance remaining on the debt as part of the repurchase price. The lender was not advised of this "assumption" and did not release Fs from liability for the debt. Held: P may not include the $ 101,125 debt in the cost of the new residence under sec. 1034, I.R.C.
Held, further, P is liable for an addition to tax for substantial understatement under sec. 6661(a), I.R.C.
William Dunnegan, pro se. For respondent: Julia A. Roy. LARO
LARO
MEMORANDUM FINDINGS OF FACT AND OPINION LARO, Judge: This case is before the Court fully stipulated *160 under Rule 122(a). [1] William Dunnegan and Jacqueline Fisher petitioned the Court to redetermine respondent's determination of a $ 38,264 deficiency in their 1988 Federal income tax and an $ 8,960 addition thereto under section 6661(a). Since Jacqueline Fisher is involved in this matter only because she filed a 1988 joint Federal income tax return with William Dunnegan, we use the term "petitioner" to refer solely to William Dunnegan. Following concessions, [2] the issues for decision are: 1. Whether exhibit 14-N is relevant to this proceeding. We hold that it is not. *161 2. Whether petitioner may compute deferred gain under section 1034 by including in the cost of his new residence a debt that he had incurred to purchase the same residence more than 4 years earlier; at all times relevant herein, petitioner was jointly and severally liable for the debt. We hold that he may not. 3. Whether petitioner is liable for an addition to tax for substantial understatement under section 6661(a). We hold that he is. FINDINGS OF FACT [3]
Petitioner is an attorney. He and Jacqueline Fisher are married individuals who resided in Ho Ho Kus, New Jersey, when they petitioned the Court. Petitioner and Jacqueline Fisher filed a joint Federal income tax return for the year in issue. On May 31, 1985, petitioner's parents (Parents) and petitioner purchased a one-family house located at 113 Sheridan Avenue, Ho Ho Kus, New Jersey (the Sheridan property). Petitioner and Parents acquired the Sheridan property as tenants *162 in common; petitioner owned a one-half interest in the property after the purchase. The purchase price of the Sheridan property was $ 149,900, and petitioner and Parents: (1) Each paid approximately $ 20,000 cash and (2) obtained a 30-year loan (secured by a mortgage on the Sheridan property) of $ 111,750. Petitioner and Parents were jointly and severally liable on the debt. From July 1985 until on or about August 30, 1988, petitioner and Parents rented the Sheridan property. Petitioner reported one-half of each year's rental income and expenses on his 1985 through 1988 Schedules E, Supplemental Income Schedule. Petitioner sold his primary residence at 10 Marion Court, Ho Ho Kus, New Jersey (the Marion property) for $ 225,000 on August 30, 1988, and his selling expenses were $ 11,000. [4] Petitioner's adjusted basis in the Marion property was $ 102,000 at the time of the sale. Petitioner filed Form 2119, Sale of Your Home, as part of his 1988 joint Federal income tax return, stating that he was deferring the recognition of his $ 112,000 gain because he intended to buy a new residence within the prescribed replacement period under section 1034(a). *163 On August 30, 1988, petitioner moved into the Sheridan property under an oral agreement (between him and Parents) that he would pay all of the property's expenses as rent. A written lease was never executed. Petitioner claimed deductions for home mortgage interest of $ 12,124 and $ 9,468 on his 1989 and 1990 joint Federal income tax returns, respectively, with respect to the Sheridan property. On February 21, 1990, petitioner gave his interest in the Sheridan property to Parents. [5] Parents did not agree to assume petitioner's liability with respect to the debt that encumbered the property, and the lender was neither advised of, nor consented to, the transfer. On July 31, 1990, petitioner agreed in writing to repurchase the Sheridan property from Parents for its then fair market value of $ 215,000. Petitioner agreed in writing to: (1) Pay Parents $ 20,000 in cash, [6] (2) assume the $ 101,125 debt that encumbered the property on July 31, 1990, and (3) pay Parents $ 93,875, exclusive of interest at 7 percent per annum, in yearly installments of $ 6,000. Although the written agreement provided that petitioner would execute a $ 93,875 note in favor of Parents, a note was never *164 intended to be provided (and, in fact, was never provided) because petitioner and Parents believed that providing a note might cause the Commissioner to challenge Parent's installment sale treatment on the sale. [7] The Sheridan property was transferred from Parents to petitioner on the same date. The lender was neither advised of, nor consented to, the transfer. On September 15, 1990, the Sheridan property first appeared in a computerized multiple listing for sale; the asking price was $ 259,000. On March 27, 1991, the Sheridan property was sold to an unrelated buyer for $ 240,000. The net sales *165 proceeds equaled $ 222,316.54. Petitioner received $ 188,316.54 of these proceeds in cash, and a 5-year note (secured by a mortgage on the property) in the principal amount of $ 34,000 was issued to Parents. The note provided for a balloon payment of $ 47,686 (inclusive of interest at 7 percent per annum) on March 27, 1996. Petitioner directed the buyers to issue the note to Parents in satisfaction of 5-2/3 years of payments under Parents' July 31, 1990, agreement with petitioner. Petitioner never made any other payments to Parents with respect to their agreement of July 31, 1990. Prior to effecting the agreement of July 31, 1990, petitioner read section 1034 and the regulations thereunder. He also consulted for approximately 3 to 5 minutes with a partner practicing in the tax department at the law firm of Shea & Gould, regarding the anticipated transaction and its effect under section 1034. [8] Two days after their consultation, the partner advised petitioner that he should experience no adverse tax consequences if he proceeded with the transaction as proposed. *166 OPINION 1. Admissibility of Exhibit 14-N
Respondent objects to the admissibility of exhibit 14-N on the grounds of relevancy. Exhibit 14-N consists of numerous items of correspondence between petitioner and respondent's examination division pertaining primarily to the conduct of respondent's audit of petitioner's 1989, 1990, and 1991 taxable years and to petitioner's disagreement with certain of respondent's positions taken during the audit. All of this correspondence preceded respondent's issuance to petitioner of the subject notice of deficiency. We sustain respondent's objection. It is well settled that the Court will not look behind a notice of deficiency under the facts presented herein to review respondent's determination or to review her administrative policy or procedure for making a determination. Dellacroce v. Commissioner, 83 T.C. 269, 280 (1984); Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 327 (1974). A trial in this Court is a proceeding de novo, Greenberg's Express, Inc. v. Commissioner, supra at 328, and, as such, the Court's determination of *167 a taxpayer's tax liability must be based on the merits of the case, rather than on a previous record developed at the administrative level. Accordingly, we have not relied on exhibit 14-N to find facts or to render our opinion. [9]
2. Petitioner's Cost of Repurchasing the Sheridan Property
Section 1034 requires that the recognition of gain on the sale of a principal residence must be deferred in certain situations. Petitioner must prove that his sale of the Marion property is one of these situations. Robarts v. Commissioner, 103 T.C. 72, 76 (1994); Thomas v. Commissioner, 92 T.C. 206, 242 (1989); Shaw v. Commissioner, 69 T.C. 1034, 1038 (1978). Given the concessions *168 by the parties, we focus on whether petitioner's repurchase of the Sheridan property was effective to defer the gain on his sale of the Marion property. Section 1034(a) allows an individual to defer the recognition of all or part of any gain realized on the sale of his or her principal residence if the individual purchases a new principal residence within the period beginning 2 years before the date of the sale and ending 2 years after that date. Section 1034(a) provides that the gain on such a sale is recognized only to the extent that the individual's adjusted sale price of the old residence exceeds his or her "cost of purchasing the new residence". The cost of purchasing the new residence under section 1034 is not always the same as the taxpayer's basis in the property. Section 1034(c)(2) provides that "In determining the taxpayer's cost of purchasing a residence, there shall be included only so much of his cost as is attributable to the acquisition * * * during the [4-year] period specified in subsection (a)." See also sec. 1.1034- 1(b)(7), Income Tax Regs. [10] The regulations under section 1034 provide that the cost of purchasing a new residence "includes not only cash but *169 also any indebtedness to which the property purchased is subject at the time of the purchase whether or not assumed by the taxpayer". Sec. 1.1034-1(c)(4)(i), Income Tax Regs. The regulations also provide that "The taxpayer's cost of purchasing the new residence includes only so much of such cost as is attributable to acquisition * * * within the period of * * * in which the purchase and use of the new residence must be made in order to have gain on the sale of the old residence not recognized under this section." Sec. 1.1034- 1(c)(4)(ii), Income Tax Regs. It is on the language in section 1.1034-1(c)(4)(i), Income Tax Regs., that petitioner relies. Petitioner argues in his brief that he is allowed to include the $ 101,125 liability in his cost of repurchasing the new residence because the Sheridan property was subject to the liability at the time that he repurchased it. According to petitioner, section 1.1034-1(c)(4)(ii), Income Tax Regs., is irrelevant because subdivision (i) is the specific provision that controls the disposition of his case. Petitioner also contends that the fact that he was already liable for this debt is irrelevant. *170 We are unpersuaded by petitioner's argument. Contrary to petitioner's assertion, his cost of repurchasing the Sheridan property in 1990 does not include the $ 101,125 debt because none of that debt was "attributable to the acquisition * * * during the * * * [4-year] period specified in subsection (a)." [11]Sec. 1034(c)(2); see also Kern v. Granquist, 291 F.2d 29 (9th Cir. 1961); Shaw v. Commissioner, supra at 1037-1038; sec. 1.1034-1(b)(7), Income Tax Regs. The Code and regulations are explicit: Only costs that were incurred by petitioner within the prescribed period before or after his sale of the Marion property are included in his cost of purchasing the new residence under section 1034. Although section 1.1034-1(c)(4)(i), Income Tax Regs., specifies that certain liabilities enter into the computation of the cost of purchasing the new residence under section 1034, those liabilities are limited by subdivision (ii) to liabilities that are incurred during the period described in section 1034(a). See Shaw v. Commissioner, supra at 1037-1038. *171 Petitioner did not incur any debt to the mortgagee within the 4-year statutory period. Petitioner and Parents became subject to joint and several liability to the mortgagee for the debt on the Sheridan property when the debt originated in 1985, which was well before the inception of the 4-year period. Their liability continued until after petitioner's repurchase of the property. Petitioner's liability for the debt was not extinguished (or otherwise lessened) by his gift to Parents on February 21, 1990. Under the law of the State of New Jersey, the governing law as provided in the loan document, a successor in interest (e.g., Parents) may assume a debt subject to a mortgage only by an express written covenant between the mortgagor and his or her successor. N.J. Stat. Ann. sec. 46:9-7.1 (1989). [12] Petitioner has not established such a covenant with respect to his gift. *172 With respect to the repurchase (and the gift), we find relevant the fact that the lender/mortgagee did not consent to the transfer. [13]Under the law of the State of New Jersey, an agreement between a mortgagor and his or her transferee does not release the mortgagor from liability for a debt to the mortgagee. The mortgagee must release a mortgagor from liability. Absent such a release, the mortgagee retains his or her claim against the mortgagor and his or her security interest in the underlying property. Ramsey v. Hutchinson, 181 A. 52, 53 (N.J. Sup. Ct. 1935), revd. on other grounds 187 A. 650 (N.J. 1936); Hunt v. Gorenberg, 155 A. 881, 883 (N.J. Sup. Ct. 1930); Palmer v. White, 46 A. 706 (N.J. Sup. Ct. 1900); see also 29 New Jersey Practice (Cunningham & Tischler, Law of Mortgages) sec. 131, at 596-597 (1975).
*173 In sum, petitioner's liability to the mortgagee did not change when he gave the Sheridan property to Parents or when he repurchased it from them. Petitioner and Parents were jointly and severally liable to the mortgagee for 100 percent of the debt before and after the gift, and that liability continued after the repurchase (notwithstanding that petitioner agreed with Parents to "assume" the entire debt as part of the repurchase). The record does not establish that the mortgagee released petitioner's Parents from any portion of the debt by reason of his purported assumption. [14] See Hovis v. Commissioner, T.C. Memo. 1995-60. We hold that petitioner may not include any part of the $ 101,125 debt in his cost of the Sheridan property. *174 3. Addition to Tax Under Sec. 6661(a)
Respondent determined that petitioner is liable for an addition to tax for a substantial understatement of income tax under section 6661(a). Section 6661(a) imposes an addition to tax equal to 25 percent of the amount attributable to a substantial understatement. An understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return or $ 5,000. Sec. 6661(b)(1)(A). An understatement is reduced to the extent that it is: (1) Based on substantial authority or (2) adequately disclosed in the return or in a statement attached to the return. Sec. 6661(b)(2)(B). Respondent's determination of an addition to tax for substantial understatement is presumed to be correct, and petitioner bears the burden of proving it incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933); Murphy v. Commissioner, 103 T.C. 111, 119-120 (1994); Weis v. Commissioner, 94 T.C. 473, 490 (1990). Petitioner argues in his brief that he is not liable for this addition to tax because he had substantial authority for *175 his treatment, given that he read the applicable statute and regulations, and consulted with a tax professional, before consummating the transaction at hand. We disagree. A taxpayer has substantial authority for the treatment of an item only when the weight of the authorities supporting his or her position is substantial in relation to the weight of authorities supporting contrary positions. A taxpayer's belief that he or she has substantial authority is irrelevant to this determination. Sec. 1.6661-3(b)(1), Income Tax Regs.; see also Antonides v. Commissioner, 91 T.C. 686, 702 (1988), affd. 893 F.2d 656 (4th Cir. 1990). We do not find that petitioner had substantial authority for his position. Petitioner, who is an attorney, bases his tax treatment solely on section 1.1034-1(c)(4)(i), Income Tax Regs. We find his exclusive reliance on this section misplaced. It cannot properly be read in isolation from the Code and case law, or from other provisions of the regulations, including section 1.1034-1(c)(4)(ii), Income Tax Regs.
We are also not persuaded by the fact that petitioner "consulted" for approximately 3 to 5 minutes *176 with a tax professional in his firm. The opinion of counsel is not substantial authority, see sec. 1.6661-3(b) (2), Income Tax Regs. We reject petitioner's suggestion that he had substantial authority for his position merely because he fleetingly discussed it with a partner at his firm. We conclude that petitioner is liable under section 6661(a). See Murphy v. Commissioner, supra at 119-120. We have considered all arguments made by petitioner and, to the extent not discussed above, find them to be without merit. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. Rule references are to the Tax Court Rules of Practice and Procedure. Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the year in issue.↩
2. Petitioner has never alleged that respondent erred with respect to her determination (included in the notice of deficiency) that his income must be increased by $ 7,424 to reflect a passive activity loss adjustment. We hold that petitioner has conceded this determination. Rule 34(b)(4); Jarvis v. Commissioner, 78 T.C. 646, 658↩ n.19 (1982). Respondent conceded through stipulation that petitioner's gain on the subject transaction was $ 112,000, rather than the $ 113,000 amount included in her notice of deficiency.
3. The stipulations and attached exhibits are incorporated herein by this reference.↩
4. Thus, petitioner's "amount realized" and "adjusted sales price" were both $ 214,000. See sec. 1.1034-1(b)(3) and (4), Income Tax Regs.↩
5. On or about Apr. 26, 1993, subsequent to the start of respondent's audit of the subject transfer, petitioner and Jacqueline Fisher filed Federal gift tax returns to report the transfer. Neither petitioner nor Ms. Fisher paid any gift tax on the transfer.↩
6. Petitioner paid Parents $ 20,000 on Aug. 1, 1990.↩
7. Petitioner also did not file a Form 1099-S, Proceeds From Real Estate Transactions, to report the sale.↩
8. Petitioner was an employee of Shea & Gould during at least his 1990 taxable year.↩
9. Exhibit 14-N, however, would have been of limited (if any) value to petitioner. Respondent did not stipulate to the truth of any fact contained therein, except to the extent that a fact was duplicative of any fact that she had otherwise stipulated.↩
10. Sec. 1.1034- 1(b)(7) and (c)(4)(ii), Income Tax Regs., does not refer to this 4-year replacement period. The regulations under sec. 1034↩ do not reflect the fact that sec. 122 of the Economic Recovery Tax Act of 1981, Pub. L. 97-34, 95 Stat. 172, 197, generally set the replacement period at 4 years (i.e., 2 years before and 2 years after the date of sale) for old residences that are sold or exchanged after July 20, 1981.
11. Petitioner devotes much time in his brief to hypothetical transactions that he states could have been consummated to reach the result that he desired. We are not persuaded by these hypothetical transactions. We focus on the facts of the transaction consummated by petitioner and give no consideration to the hypothetical facts of other transactions that petitioner may have structured to reach a given result.↩
12. N.J. Stat. Ann. sec. 46:9-7.1 (1989) provides that: Whenever real estate situated in this State shall be sold and conveyed subject to an existing mortgage or is at the time of any such sale or conveyance subject to an existing mortgage, the purchaser shall not be deemed to have assumed the debt secured by such existing mortgage and the payment thereof by reason of the amount of any such mortgage being deducted from the purchase price or by being taken into consideration in adjusting the purchase price, nor for any other reason, unless the purchaser shall have assumed such mortgage debt and the payment thereof by an express agreement in writing signed by the purchaser['s] * * * acceptance of a deed containing a covenant to the effect that the grantee assumes such mortgage debt and the payment thereof↩. [Emphasis added.]
13. There is no indication in the record that petitioner notified the lender of either transfer. It appears that the lender could have accelerated the balance of the note at the time of either transfer, charged an assumption fee, or increased the interest rate on the debt. According to the note and the underlying mortgage: If all or any part of the Property or an interest therein * * * is sold or transferred by Borrower without Lender's prior written consent, * * *, Lender may, at Lender's option, declare all the sums secured by this Mortgage to be immediately due and payable. Lender shall have waived such option to accelerate if, prior to the sale or transfer, Lender and the person to whom the Property is to be sold or transferred reach agreement in writing that the credit of such person is satisfactory to Lender and that the interest payable on the sums secured by this Mortgage shall be at such rate as Lender shall request and such person has paid to Lender such assumption fees as Lender shall request. If Lender has waived the option to accelerate provided in this paragraph 17, and if Borrower's successor in interest has executed a written assumption agreement accepted in writing by Lender, Lender may, but is not obligated to, release Borrower from all obligations under this mortgage.↩
14. Petitioner does not argue that Parents had a right of contribution from petitioner following the "assumption" to the extent that Parents were required to pay any of the debt. The record leads us to conclude that the "assumption" was a device contrived by petitioner to inflate the "cost of purchasing the new residence" under section 1034(a)↩.