T.C. Memo. 1999-347


UNITED STATES TAX COURT


LEE F. PARKER AND DIANE K. PARKER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 9590-98.                    Filed October 20, 1999.

        For purposes of deferring gain on the sale of their
former residence under sec. 1034, I.R.C., Ps sought to
include expenditures made in the construction of an
unfinished dwelling structure.  The structure was located on
the same lot as the new residence purchased by Ps, and Ps
intended eventually to use both buildings for their
residential purposes.  At the close of the 2-year statutory
period for reinvestment and deferment of gain, Ps had not
yet moved into the new structure and were instead using it
largely as a workshop area.  On the facts, <u>Held</u>: Ps have not
placed the structure into residential use as required by
sec. 1034, I.R.C., and are thus not entitled to include its
costs in order to defer recognition of gain on the sale of
their former residence.  R's determination of a deficiency
is sustained.

Curtis W. Berner, for petitioners.

Usha Ravi, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

NIMS, Judge: Respondent determined a Federal income tax deficiency for petitioners' 1991 taxable year in the amount of $54,341. The sole issue for decision is whether, for purposes of section 1034, petitioners may include expenses incurred in constructing a structure intended for eventual residential use as part of the cost of their new principal residence, thereby enabling them to defer recognition of gain on the sale of their former residence.

Unless otherwise indicated, all section references are to sections of the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. Mr. and Mrs. Parker (petitioners) sold their residence in Los Angeles, California, on December 24, 1991, for an adjusted sales price of $363,353. They realized a gain of $182,239 on the sale, but they deferred recognition of this gain pursuant to section 1034. Then, on May 19, 1992, they purchased a home in Turlock, California, for $169,500. Petitioners moved into the 1,400-

square-foot home on the Turlock property the following month and continued to occupy that dwelling as their residence up to and through the time of trial.

Shortly after moving in, because the existing 1,400 square feet were insufficient to accommodate the needs of their family, petitioners began preparations for building additional living space. Initially, petitioners contemplated constructing an attached addition. A power line easement, however, rendered such a plan unworkable. Hence, petitioners decided to build a detached residential structure of more than 3,000 square feet on the Turlock property, to be located behind the existing home. Mr. Parker (petitioner) had read about the tax benefits available under section 1034, and he inquired of his tax accountant whether the cost of the detached unit would qualify as part of the purchase price of the new residence. The tax accountant indicated that it would.

Prior to beginning construction, petitioners applied for and obtained a building permit from the City of Turlock for what the permit designated a "new" "SFD" (single family dwelling). Petitioners likewise secured a conditional use permit and variance to have the existing 1,400-square-foot home redesignated and allowed to remain in place as a "second dwelling unit on a single family zoned lot", in accordance with Turlock Municipal Code section 9-2-506. These administrative steps were

necessitated by petitioners' plans for the new structure to include, on two floors, a living room, kitchen, great room, bedrooms, bathrooms, laundry room, art studio, and garage, such that two fully functional dwelling structures would be located on the single lot.

After the building permit was approved in March of 1993, petitioner was able to begin construction. In order to reduce cost, he did most of the work himself, when his employment in and income from the film production industry would allow.

From April 21, 1992, to December 22, 1993, petitioners made capital expenditures of $210,545.96 relating to the Turlock property, in connection with either the existing residence or the new structure. When these costs are combined with the purchase price, the amount spent totals $380,045.96. Nonetheless, as of December 24, 1993, petitioners had never slept in the new structure. There was no central heating to the house at that time. The rough electrical, plumbing, and heating/ventilation systems were not approved until September of 1997. The kitchen and garage were being used as a workshop at the end of 1993. Only one bath had a sink and toilet installed. As of early 1999, construction work continued in the living room, kitchen, great room, bedrooms, bathrooms, laundry room, and art studio of the new structure. Petitioners' furniture and household goods

remained in the original home.  At the time of trial, petitioner had been working on the project for more than 6 years, and the date of completion remained uncertain.

OPINION

We must decide whether petitioners' expenditures in constructing a separate structure for future residential use are properly included as part of the cost of their new principal residence for purposes of section 1034.  If so, petitioners are entitled to defer recognition of gain on the sale of their former residence.  If not, petitioners are liable for the deficiency determined by respondent.

Petitioners contend that the separate structure should be viewed as an addition, albeit detached, to their existing residence.  Further, petitioners assert that a mere addition or capital improvement to an established new residence need not be placed into actual residential use in order for costs incurred in its construction to be added to the total purchase price for purposes of section 1034.

Conversely, respondent contends that failure by petitioners to use the separate structure as a principal residence within the statutory time period defeats their attempt to have costs

incurred in its construction included as part of their purchase price for the section 1034 calculation.  We agree with respondent that residential use is an essential prerequisite to cost inclusion.

<u>Statutory Provisions</u>

Under sections 1001 and 61, taxpayers generally must recognize in the year of sale all gain or loss realized upon the sale or exchange of property.  Section 1034, however, provides an exception which allows taxpayers to defer recognition of gain when sale proceeds are reinvested in a new principal residence. The section reads, in pertinent part, as follows:

> SEC. 1034.  ROLLOVER OF GAIN ON SALE OF PRINCIPAL RESIDENCE.
>
> (a) Nonrecognition of Gain.--If property (in this section called "old residence") used by the taxpayer as his principal residence is sold by him and, within a period beginning 2 years before the date of such sale and ending 2 years after such date, property (in this section called "new residence") is purchased and used by the taxpayer as his principal residence, gain (if any) from such sale shall be recognized only to the extent that the taxpayer's adjusted sales price * * * of the old residence exceeds the taxpayer's cost of purchasing the new residence.
>
> *   *   *   *   *   *   *
>
> (c) Rules for Application of Section.--For purposes of this section:
>
> *   *   *   *   *   *   *
>
> (2) A residence any part of which was constructed or reconstructed by the taxpayer shall be treated as purchased by the taxpayer.  In determining the taxpayer's cost of purchasing a

residence, there shall be included only so much of his cost as is attributable to the acquisition, construction, reconstruction, and improvements made which are properly chargeable to capital account, during the period specified in subsection(a).

(Section 1034 was repealed by section 312(b) of the Taxpayer Relief Act of 1997, Pub. L. 105-34, 111 Stat. 839, generally effective for sales and exchanges of principal residences after May 6, 1997. The section 1034 rollover provision was replaced by an expanded and revised section 121.)

### General Interpretation

As a threshold matter, section 1034 specifies that gain must be reinvested in property "purchased and used by the taxpayer as his principal residence" in order for nonrecognition treatment to be available. In ascertaining what is meant by "used" as a "principal residence", this Court has stated in an oft-quoted pronouncement: "The elements of residence are the fact of abode and the intention of remaining, and the concept of residence is made up of a combination of acts and intention. Neither bodily presence alone nor intention alone will suffice to create a residence." Stolk v. Commissioner, 40 T.C. 345, 353 (1963), affd. 326 F.2d 760 (2d Cir. 1964); see also Perry v. Commissioner, 91 F.3d 82, 85 (9th Cir. 1996), affg. T.C. Memo. 1994-247.

With respect to the abode element, courts have consistently focused upon actual, physical use and occupancy as a prerequisite

to the benefit of deferring gain recognition.  Explicit and unambiguous judicial language such as the following has left little room for question: "for property to be 'used by the taxpayer as his principal residence' within the meaning of section 1034(a), that taxpayer must physically occupy and live in the house."  Perry v. Commissioner, supra at 85 (quoting Young v. Commissioner, T.C. Memo. 1985-127).

Concerning the intent element, section 1.1034-1(c)(3)(i), Income Tax Regs., interpreting section 1034 provides:

> Whether or not property is used by the taxpayer as his residence, and whether or not property is used by the taxpayer as his principal residence (in the case of a taxpayer using more than one property as a residence), depends upon all the facts and circumstances in each case, including the good faith of the taxpayer.

Courts have likewise reiterated that intent is to be taken into account, but they have nonetheless steadfastly adhered to the principle that intent alone, divorced from actual use, will not satisfy section 1034.  See United States v. Sheahan, 323 F.2d 383, 385-387 (5th Cir. 1963); Bayley v. Commissioner, 35 T.C. 288, 295-297 (1960).  As stated by the court in United States v. Sheahan, 323 F.2d at 385:

> It is true that the good faith of the taxpayer is a circumstance to be weighed, and it may be the decisive factor in a close case in determining whether one of two houses is the principal residence, or whether the house is a residence, but there must be supporting facts to show that the taxpayer used the new property as his principal residence.

Thus, in general, courts have made clear that lack of actual occupancy will thwart the attempts of even the most well-intentioned taxpayer to utilize the deferment rules of section 1034.

### Application to Construction and Improvements

More specifically, this focus on actual use does not shift when examination turns to what courts and legislatures have had to say concerning construction and improvements. As indicated above, section 1034 explicitly provides that capital expenditures for construction, reconstruction, and improvements may be included in the statutory cost of purchase. However, to relieve petitioners from the requirement that the separate structure be put to some residential use within the prescribed time period would be not only inconsistent with the history of the section, but also illogical.

As early as 1961, in interpreting the predecessor of section 1034 (section 112(n) of the 1939 Code), the U.S. Court of Appeals for the Ninth Circuit concluded that "Congress intended to permit the taxpayer to obtain the benefit, taxwise, only of so much of the cost of construction of, or improvements to [emphasis added], a new house as the taxpayer had constructed and used within the eighteen month period herein applicable." Kern v. Granquist, 291 F.2d 29, 33 (9th Cir. 1961). Since the 1939 Code provision, like section 1034(c)(2), used the language "construction * * * and

improvements made", the court further declared that "We cannot in good conscience rewrite the statute as though it included the words 'contractual liabilities incurred during the 18 months period.'" Id.

In contrast, petitioners here contend that the completeness of the improvements is immaterial; rather, the only question is the amount paid in connection with capital improvements during the reinvestment period. Section 1034 case law, however, fails to support this view. There are no reported cases permitting inclusion of costs incurred for the construction of a separate structure not yet placed in residential use. Although in Mitchell v. Commissioner, T.C. Memo. 1997-493, cited by petitioners, the Court uses the terminology "commenced and/or completed" in its discussion of whether the cost of renovations could be included in a section 1034 calculation, the case is distinguishable because the Court decided that the improvements were not even commenced or paid for within the reinvestment period.

The case law has denied nonrecognition treatment where expenditures were made for residential structures not yet occupied. For instance, in Elam v. Commissioner, 58 T.C. 238 (1972), affd. per curiam 477 F.2d 1333 (6th Cir. 1973), the taxpayers sold their former residence and purchased property on which they intended to build their new main residence and a guest

house.  Within the reinvestment period, they constructed and moved into the guest house.  See id.  They also expended funds in building the main house, but this structure was still under construction and not yet occupied at the expiration of the statutory period.  See id.  As a result, this Court refused to allow costs of the main house to be taken into account for purposes of section 1034, stating that the main house "possessed no residential utility" and "was simply not put into use as a residence before the prescribed time limit."  Id. at 241.

Although petitioners attempt to distinguish Elam v. Commissioner, supra, on the grounds that the guest house and main house in that case were separate residences, rather than two structures intended as a single residence, this difference becomes irrelevant in light of the precedent that both new residences and mere additions or improvements must be placed into residential use before section 1034 will apply.  Moreover, the Court in Elam even addresses this multiple buildings issue. While indicating that outbuildings and servient structures might in some scenarios logically and functionally be classified as part of a residence, the Court makes clear that an unfinished structure intended for future dwelling performs no such logical residential role.  See id.

Poague v. United States, 66 AFTR 2d 90-5825, 90-2 USTC par. 50,539 (E.D. Va. 1990), affd. without published opinion 947 F.2d

942 (4th Cir. 1991), cited by petitioners, offers an example of a situation where multiple structures were performing their logical and intended function in support of a residence and, hence, similarly emphasizes the importance of normal residential use.

Still further illustrating the type of use necessary to qualify a structure for section 1034 purposes, the court in United States v. Sheahan, 323 F.2d at 387-388, declared even planting shrubbery, putting up a mailbox, moving in boxes of belongings, and occasionally eating lunch at a newly constructed house to be only "token 'use'" insufficient to satisfy the statutory requirement that construction be used as a residence. Likewise, in Bayley v. Commissioner, 35 T.C. at 295-296, the Court refused to permit section 1034 to be used, despite the taxpayers' having moved in some furniture, where "the rather extensive state of incompletion of the new residence--no water or sewerage connections, no appliances in the kitchen, and lights and flooring only in minimal quantities--effectively prevented petitioners from living in the new residence." The Court in Bayley particularly emphasized the taxpayers' failure to sleep in the new residence as indicative of the fact that they had not begun to use and occupy it within the meaning of the statute. See id. at 296.

Here, petitioners' new structure stood in a parallel state of incompletion at the end of 1993 when the statutory period

expired.  Petitioners had never slept in the building at that time.  There was no central heating.  The kitchen was being used as a workshop to aid in the ongoing construction. The garage had similarly been pressed into service as a workshop and used to house construction tools.  Three of the structure's major systems were not even inspected by the City of Turlock and approved in rough form until September of 1997.

Thus, nearly 4 years after the expiration of the statutory period, the residence could boast only rough electrical, plumbing, and heating/ventilation systems.  Moreover, the condition of a home with such rough systems is significantly removed from what could be termed livable.  A rough electrical system must include wiring, but not switches and fixtures.  A rough plumbing system similarly denotes pipes and drain lines for fixtures such as toilets and bathtubs, but not the fixtures themselves.  A rough heating system has vents for a water heater or furnace, but, again, need not have the actual heater or furnace.  Here, the only evidence offered by petitioners that their systems were in anything other than such rough form at the close of the relevant period is testimony that a toilet and sink had been installed in one bathroom.  Furthermore, photographs taken in 1999 reveal that construction work remained in progress in the intended living room, kitchen, great room, bedrooms, bathrooms, laundry room, and art studio of the new structure.  In

contrast, pictures taken at the same time in the older home show that petitioners' furniture and household goods were still located in the original building. Consequently, we must conclude that the new structure was simply not ready for residential occupancy and was not occupied before the expiration of the statutory period.

Hence, the attempts of petitioners to comply with the statute, like those of the taxpayers in Elam, Sheahan, and Bayley, cannot be said to rise above the level of token use. The general incompleteness; the lack of major furniture, appliances, and amenities; and the failure to sleep in the structure cannot be overcome by petitioners' minimal or workshop use of the structure. Thus, since petitioners simply have not placed the new structure into use as part of their residence, a denial of nonrecognition treatment is required.

We therefore hold that petitioners are not entitled to defer recognition under section 1034 of gain on the sale of their principal residence. Respondent's determination of a deficiency with respect to petitioners' 1991 taxable year is sustained.

To reflect the foregoing,

Decision will be entered
for respondent.