T.C. Memo. 2004-138

UNITED STATES TAX COURT

JAMES DIRKS, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6867-03.            Filed June 10, 2004.

Michael P. Casterton, for petitioner.

Kathryn K. Vetter, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LARO, Judge:  Petitioner petitioned the Court to redetermine
a $44,097 deficiency in his 2000 Federal income tax and an $8,819
accuracy-related penalty under section 6662(a) and (d) for
substantial understatement of income tax.[1]  We decide whether

_____

[1] Unless otherwise noted, section references are to the
                                          (continued...)

distributions of cash which petitioner received in 2000 from one individual retirement account (IRA) and rolled over to another IRA more than 60 days later are excludable from his 2000 gross income under the 60-day rule of section 408(d)(3)(A)(i) (60-day rule) by virtue of the substantial compliance doctrine. We hold they are not. We also decide whether petitioner is liable for an accuracy-related penalty under section 6662(a) and (d). We hold he is.

## FINDINGS OF FACT

Some facts were stipulated. The stipulated facts and the exhibits submitted therewith are incorporated herein by this reference. We find the stipulated facts accordingly. Petitioner is an attorney who lived in Pollock Pines, California, when his petition was filed. He was born on September 5, 1950, and has been a member of the State Bar of California since 1982. He presently works as a research lawyer for a superior court in California.

Petitioner and his companion purchased a home in May 1999. At the end of 1999, while living in that home, petitioner learned of a house (house) that was being auctioned in a foreclosure sale. Petitioner bid on the house during December 1999. His bid was accepted in or about the second week of January 2000.

---

[1](...continued)
applicable versions of the Internal Revenue Code.

During 2000, petitioner had an IRA (first IRA) at Nicholas Fund, Inc. He withdrew a total of $118,000 from the first IRA on January 19 and 21, 2000, in order to purchase the house. He had previously researched section 408 as it applied to withdrawing those funds and to paying them into another IRA within 60 days so as to exclude his withdrawals from his gross income. He concluded that the 60-day rule required that he pay the $118,000 into another IRA no later than March 20, 2000, in order to exclude both days' distributions from his gross income.[2]

Petitioner used the $118,000 to purchase the house on February 7, 2000. Shortly thereafter, he contacted a mortgage broker to finance his purchase through a mortgage loan. He applied with the mortgage broker for the loan, and the mortgage broker sent petitioner's paperwork to a lender for approval. The lender approved the loan on March 24, 2000, after requesting and receiving from petitioner additional information. Escrow on the financing closed on April 3, 2000, and petitioner paid $118,000 of the resulting funds into a second IRA (second IRA) on April 4, 2000.

Nicholas Fund, Inc., issued to petitioner a 2000 Form 1099-R, Distributions from Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc. The form

---

[2] Given that 2000 was a leap year, the 60th day after the first distribution actually fell on Mar. 19, 2000.

stated that petitioner had during 2000 received $118,000 in distributions from the first IRA and that these distribution were taxable in full. Petitioner did not report the $118,000 on his 2000 Federal income tax return (2000 tax return). The 2000 tax return was timely received by respondent's service center for filing on August 17, 2001.

## OPINION

We decide whether petitioner's receipt of the $118,000 is excludable from his 2000 gross income. Petitioner argues it is. Petitioner concedes that he paid these funds into the second IRA more than 60 days after he received them but asserts that he meets the 60-day rule by virtue of the "equitable doctrine of substantial compliance". Petitioner supports his assertion, for which he bears the burden of proof,[3] see Hamilton v. Commissioner, T.C. Memo. 1954-118, affd. per curiam 232 F.2d 891 (6th Cir. 1956); cf. Food Lion, Inc. v. United Food & Commercial Workers Intl. Union, 103 F.3d 1007, 1017 (D.C. Cir. 1997), primarily with citations to Shotgun Delivery, Inc. v. United States, 269 F.3d 969 (9th Cir. 2001), Prussner v. United States, 896 F.2d 218 (7th Cir. 1990), Wood v. Commissioner, 93 T.C. 114

---

[3] Given that petitioner makes no claim that respondent bears the burden of proof under sec. 7491(a), we conclude that sec. 7491(a) has no applicability to this case. See, e.g., sec. 7491(b) (sec. 7491(a) applies with respect to an issue only if the taxpayer meets certain requirements). We note, however, that we decide this issue without resort to which party bears the burden of proof.

(1989), <u>Am. Air Filter Co. v. Commissioner</u>, 81 T.C. 709 (1983), and <u>Tipps v. Commissioner</u>, 74 T.C. 458, 468 (1980).[4]  Petitioner notes that section 408 was recently amended to provide that "The Secretary may waive the [relevant] 60-day requirement * * * where the failure to waive such requirement would be against equity or good conscience, including casualty, disaster, or other events beyond the reasonable control of the individual subject to such requirement."  Sec. 408(d)(3)(I) as added by the Economic Growth and Tax Relief Reconciliation Act of 2001, Pub. L. 107-16, sec. 644, 115 Stat. 123.

We disagree with petitioner's argument that the $118,000 is excludable from his 2000 gross income.  Under section 408(d)(1), distributions from an IRA are generally includable in the distributee's gross income in the year of distribution.  Although an exception to this general rule lies in certain cases where a distribution is paid into another IRA, see sec. 408(d)(3)(A)(i), this case is not one of those cases.  The exception requires that the distributed funds be paid into another IRA within 60 days after the distributee receives them.  <u>Id.</u>  Petitioner did not within this 60-day period pay into the second IRA any of the $118,000 withdrawn from the first IRA.

---

[4] Petitioner also cites <u>Irwin v. VA</u>, 498 U.S. 89 (1990), and notes that <u>Irwin</u> concerned equitable tolling.  In that petitioner has made no claim of equitable tolling in this case, we do not decide that issue.

Petitioner relies erroneously on Wood v. Commissioner, supra, in arguing that the distributions are excludable from his gross income even though he failed to meet the 60-day rule. There, the Court held that the taxpayers' rollover of stock to an IRA was timely even though the IRA trustee recorded the stock in the wrong account and did not correct this error until approximately 4 months after the 60-day period expired. In holding that the taxpayers had effected a rollover of the distribution within the 60-day period, the Court noted that the taxpayers had within that period opened up the IRA, delivered the stock to the trustee, instructed the trustee to roll over the stock into the IRA, been assured by the trustee that the rollover would be consummated as instructed, and in fact consummated the rollover. The Court did not, contrary to petitioner's assertion, "disregard" the applicable 60-day period to accommodate a rollover that was made after the 60-day period.

Nor does petitioner rely appropriately on Shotgun Delivery, Inc. v. United States, supra, Prussner v. United States, supra, Am. Air Filter Co. v. Commissioner, supra, and Tipps v. Commissioner, supra, in arguing that he prevails under the substantial compliance doctrine. While petitioner observes correctly that these cases state that substantial compliance with "regulatory requirements" may suffice in certain circumstances, the 60-day rule is not regulatory but is found in the statute

itself. This Court has applied the doctrine of substantial compliance to excuse taxpayers from strict compliance with procedural regulatory requirements such as the manner in which an election must be made. See Estate of Chamberlain v. Commissioner, T.C. Memo. 1999-181 (and cases cited therein), affd. 9 Fed. Appx. 713 (9th Cir. 2001). Other Federal courts also have applied the doctrine in the setting of regulatory requirements. See id.

Although neither party has argued that the substantial compliance doctrine may also apply in the setting of a statutory requirement, the Court of Appeals for the Ninth Circuit, the court to which an appeal of this case lies, has indicated that the doctrine may apply to "statutory prerequisites". Sawyer v. County of Sonoma, 719 F.2d 1001, 1008 (9th Cir. 1983). However, the court stated:

> in the context of statutory prerequisites, the doctrine
> can be applied only where invocation thereof would not
> defeat the policies of the underlying statutory
> provisions. * * * In addition, the doctrine of
> substantial compliance can have no application in the
> context of a clear statutory prerequisite that is known
> to the party seeking to apply the doctrine. [Id.]

Petitioner asserts that the choice of 60 days in the 60-day rule was "arbitrary and procedural" and that the policy of the statute is to promote the maintenance of funds in a retirement account. Petitioner concludes that this policy is preserved in this case, given that he has paid the $118,000 into the second

IRA, and that his failure to have met the 60-day rule is of no consequence.  We disagree with petitioner's suggestion that we may simply close our eyes to the 60-day period and focus blindly on the fact that he has paid the withdrawn funds into the second IRA.  In addition to the fact that the 60-day rule is a "fundamental element of the statutory requirements for an IRA rollover contribution", Metcalf v. Commissioner, T.C. Memo. 2002-123, affd. 62 Fed. Appx. 811 (9th Cir. 2003), the 60-day rule is a "clear statutory prerequisite" that was well known to petitioner even before he withdrew the funds from the first IRA.

Moreover, an application of the substantial compliance doctrine to a statutorily prescribed fixed deadline such as the 60-day rule is problematic.  By analogy, the Supreme Court has noted as to filing deadlines that "deadlines, like statutes of limitations, necessarily operate harshly and arbitrarily with respect to individuals who fall just on the other side of them, but if the concept of a filing deadline is to have any content, the deadline must be enforced." United States v. Locke, 471 U.S. 84, 100-101 (1985).  In addition, as the Court of Appeals for the Seventh Circuit has noted:

> All fixed deadlines seem harsh because all can be
> missed by a whisker--by a day (United States v. Locke,
> 471 U.S. 84, 105 S.Ct. 1785, 85 L.Ed.2d 64 (1985)) or
> for that matter by an hour or a minute.  They are
> arbitrary by nature.  * * *  The legal system lives on
> fixed deadlines; their occasional harshness is redeemed
> by the clarity which they impart to legal obligation.
> * * *  There is no general judicial power to relieve

from deadlines fixed by legislatures * * * [<u>Prussner</u> <u>v. United States</u>, 896 F.2d at 222-223.]

We conclude that we are not at liberty in this case to ignore the 60-day deadline that Congress has prescribed clearly and unequivocally in section 408(d)(3)(A)(i). Any modification to that deadline is a legislative and not a judicial function. See <u>J.E. Riley Inv. Co. v. Commissioner</u>, 311 U.S. 55, 59 (1940); <u>Xi v. United States</u>, 298 F.3d 832, 839 (9th Cir. 2002); <u>Prussner v. United States</u>, <u>supra</u> at 222-223; <u>Kern v. Granquist</u>, 291 F.2d 29, 33 (9th Cir. 1961). In fact, petitioner notes correctly that Congress has recently amended section 408 to authorize the Secretary to waive this 60-day period in certain cases. See sec. 408(d)(3)(I), as added by the Economic Growth and Tax Relief Reconciliation Act of 2001, Pub. L. 107-16, sec. 644(a), 115 Stat. 123. Given that this amendment applies only to distributions after December 31, 2001, <u>id.</u>; see also <u>Anderson v. Commissioner</u>, T.C. Memo. 2002-171, it does not apply here. We sustain respondent's determination as to the deficiency.[5]

---

[5] In addition to tax on petitioner's receipt of the $118,000, respondent determined as part of this deficiency that petitioner was liable for the 10-percent additional tax under sec. 72(t). Petitioner does not in his brief address this determination, and we consider it conceded. <u>Rybak v. Commissioner</u>, 91 T.C. 524, 566 (1988); <u>Money v. Commissioner</u>, 89 T.C. 46, 48 (1987). We note, however, that the additional tax generally applies to all distributions from an IRA, see sec. 72(t)(1), and that the record does not establish that any of the exceptions to this general rule found in sec. 72(t)(2) are applicable.

Respondent also determined that petitioner is liable for an accuracy-related penalty under section 6662(a) and (d).  Section 6662(a) and (d) imposes an accuracy-related penalty if any portion of an underpayment is attributable to a substantial understatement of income tax.  An understatement of income tax is substantial if it exceeds 10 percent of the tax required to be shown on the return or $5,000.  Sec. 6662(d)(1).  Respondent bears the burden of production under section 7491(c) and must come forward with sufficient evidence indicating that it is appropriate to impose an accuracy-related penalty.  Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).  Once respondent has met this burden, the taxpayer must come forward with persuasive evidence establishing that the accuracy-related penalty does not apply.  Id.  The taxpayer may establish, for example, that part or all of the accuracy-related penalty is inapplicable because it is attributable to an understatement for which the taxpayer acted reasonably and in good faith.  Sec. 6664(c)(1).  Whether a taxpayer acted in such a fashion is a factual determination, sec. 1.6664-4(b)(1), Income Tax Regs., for which the taxpayer's effort to assess the proper tax liability is usually the most important consideration.

Here, respondent has met his burden of production in that the understatement on petitioner's return is "substantial" within the meaning of section 6662(d)(1).  Petitioner argues that he

acted reasonably and in good faith towards the subject matter of the deficiency. Petitioner notes that respondent has acknowledged through correspondence that petitioner aimed to meet the 60-day rule but was thwarted from doing so. In addition, petitioner testified that he stapled to his 2000 tax return a letter with three exhibits (collectively, letter) explaining that he had received the Form 1099-R and the $118,000 referenced therein but that he was of the view that this amount was not taxable because he had substantially complied with the 60-day rule. Petitioner testified that respondent's service center returned the letter to him on October 1, 2001, with correspondence.

We disagree with petitioner's argument that he acted reasonably and in good faith with respect to the subject matter of the deficiency. Petitioner is a seasoned attorney who filed his 2000 tax return with the knowledge and understanding of the relevant provisions of section 408. The fact that he may have intended earnestly to meet the 60-day rule did not excuse him from not reporting the withdrawals as income when he failed to meet that rule. Nor do we believe that reasonableness and good faith may be found in petitioner's litigating position that he substantially complied with the 60-day rule by paying the amount of withdrawals into the second IRA contemporaneously with the closing of his escrow.

Although we find petitioner to have been credible when he testified as to his intent to meet the 60-day rule, we do not find likewise as to his testimony concerning the letter. The parties stipulated that Exhibit 1-J was a copy of the "federal income tax return filed by petitioner for 2000" and that return contained neither the letter nor any mention thereof. We decline on the basis of the record at hand to make petitioner's desired finding that the letter was the enclosed "IRA Documentation" that respondent's service center returned to him on October 1, 2001, with correspondence. The correspondence states specifically that it relates to petitioner's "inquiry of Aug. 27, 2001" and, with the exception of a reference to December 31, 2000, as that of the tax period involved, contains no reference to petitioner's 2000 tax return that was received by respondent on August 17, 2001. We sustain respondent's determination as to the accuracy-related penalty under section 6662(a) and (d).

All arguments made by the parties have been considered, and those arguments not discussed herein have been found to be without merit. Accordingly,

Decision will be entered

for respondent.