**Lucille PRUSSNER, as executrix of the estate of Aileen E. Pfeifer, Plaintiff–Appellee,**

**v.**

**UNITED STATES of America, Defendant–Appellant.**

**No. 88–1933.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 30, 1988.

Argued En Banc Dec. 6, 1989.

Decided Feb. 15, 1990.

David J. Duez (argued), McDermott, Will & Emery, Chicago, Ill., Robert M. Bellatti, Bellatti & Barton, Springfield, Ill., for plaintiff-appellee.

Jeffrey N. Kaplan, Dept. of Justice, Tax Div., Teresa McLaughlin (argued), Dept. of Justice, Tax Div., Appellate Section, Washington, D.C., Frances C. Hulin, Asst. U.S. Atty., Danville, Ill., Gary R. Allen, William S. Rose, Jr., Asst. Atty. Gen., Dept. of Justice, Tax Div., Appellate Section, David E. Carmack, Dept. of Justice, Tax Div., Washington, D.C., for defendant-appellant.

Before BAUER, Chief Judge, and CUMMINGS, CUDAHY, POSNER, COFFEY, EASTERBROOK, RIPPLE, MANION and KANNE, Circuit Judges.

POSNER, Circuit Judge.

Since 1976, heirs to family farms and other family businesses have been permitted, for purposes of the estate tax, to elect to value the assets of the farm or business in their current use, rather than being required, like other heirs, to value the assets at their commercially most lucrative use. 26 U.S.C. § 2032A; *Martin v. Commissioner*, 783 F.2d 81 (7th Cir.1986). The requirements for electing this "qualified use" or "special use" or "current use" valuation (all three terms are in circulation) are complex. The Internal Revenue Service, regarding lenient treatment of family businesses as a giveaway, construes these requirements strictly. *Estate of Gunland v. Commissioner*, 88 T.C. 1453 (1987); *Estate of Grimes v. Commissioner*, 56 T.C.M. 890 (1988) (appeal to this court pending). Twice, after complaints from taxpayers who were denied qualified-use valuation because of failure to comply with all the technical requirements for a valid election, Congress has passed statutes designed to ameliorate the consequences for the taxpayer who complies substantially although not completely. § 2032A(d)(3) of the Internal Revenue Code, 26 U.S.C. § 2032A(d)(3), added by the Deficit Reduction Act of 1984, P.L. 98–369, 98 Stat. 1030; § 1421 of the Tax Reform Act of 1986, P.L. 99–514, 100 Stat. 2716. This appeal requires us to interpret these statutes and a judge-made doctrine of substantial compliance. Because of doubts about the soundness of the position taken by the only other court of appeals to have interpreted the statutes, *McDonald v. Commissioner*, 853 F.2d 1494 (8th Cir.1988); *Foss v. United States*, 865 F.2d 178 (8th Cir.1989), and

because the issue of their meaning is a recurrent one (as evidenced by the pending appeal in *Grimes*), we decided to hear the case en banc in advance of issuing a panel decision. 7th Cir.R. 40(f).

Aileen Pfeifer died on March 12, 1981. On December 14, her executrix, Lucille Prussner, filed a timely estate tax return together with a notice of election under section 2032A. The return valued 200 acres owned by the estate as farmland worth $119,000, rather than at its market value of $375,000. Although the notice of election contained all the information that the applicable Treasury regulation requires, 26 C.F.R. § 20.2032A–8(a)(3), the regulation also provides that "an election under this section is made by attaching to a timely filed estate tax return" not only the notice of election but also a recapture agreement; the requirement is repeated on the estate tax return that Prussner filed (Form 706, as revised in January 1979). The statute itself requires the filing of a recapture agreement as a condition of a valid election, although it does not specify when the agreement must be filed. § 2032A(a)(1)(B). The agreement, described both in the statute, § 2032A(d)(2), and in the regulation, § 20.2032A–8(c), is required to be signed by everyone having a vested or contingent interest in the estate, to express consent to the collection of any additional estate tax which may later be imposed if the property is put to uses other than qualified ones, 26 U.S.C. § 2032A(c)(5), and to designate an agent to act for the signators in dealing with the Internal Revenue Service. By identifying the heirs, determining that the executor is speaking for them in electing to maintain the assets of the estate in the qualified use (here, as farmland), consenting to the imposition of additional tax, and designating a single agent for the heirs' dealings with the Internal Revenue Service, the recapture agreement simplifies the collection of such tax if and when it becomes due.

Prussner's lawyer failed to attach a recapture agreement to the estate tax return, instead attaching a letter which stated that "unfortunately, the agreement ... was not fully executed at the time because the heirs reside throughout the United States. I hope to send this agreement to you within the next few weeks." Four months later he filed an agreement that complied fully with all the requirements of the regulation—other than timeliness. In October 1984, almost three years after the return had been filed, the Internal Revenue Service disallowed Prussner's election of qualified-use valuation because the recapture agreement had not been filed with the estate tax return, and revaluing the farmland at its most valuable commercial use assessed an additional tax of $118,000. Prussner paid, and brought this suit for refund. The district judge, holding that the letter from Prussner's lawyer that we have quoted was a recapture agreement, albeit a defective one, held that since Prussner had cured its deficiencies before the Service audited the return, she was entitled to relief under section 2032A(d)(3). 87–2 U.S.T.C. ¶ 13,739, 1987 WL 47915 (C.D.Ill.1987). (Although enacted after the death of Prussner's decedent, the statute was explicitly made retroactive to 1976. P.L. 98–369, § 1025(b), 98 Stat. 1030.) The judge did not consider whether the election might also be valid under either section 1421 or the judicial doctrine of substantial compliance, but Prussner urges these as alternative grounds for upholding the judgment.

Section 2032A(d)(3) requires the Treasury to

prescribe procedures which provide that in any case in which—

(A) the executor makes an election under paragraph (1) within the time prescribed for filing such election, and

(B) substantially complies with the regulations prescribed by the Secretary [of the Treasury] with respect to such election, but—

(i) the notice of election, as filed, does not contain all required information, or

(ii) signatures of 1 or more persons required to enter into the [recapture agreement] are not included on the agreement as filed, or the agreement

does not contain all required information,

the executor will have a reasonable period of time (not exceeding 90 days) after notification of such failures to provide such information or agreements.

Paragraph (1) of subsection (d) provides that the election "shall be made in such manner as the Secretary shall by regulations prescribe." The regulations require the filing of a notice of election and a recapture agreement as attachments to the estate tax return. Prussner sensibly does not question the validity of the regulations. *Estate of Gunland, supra,* 88 T.C. at 1456–58. By "agreements" in the last line the statute evidently means an additional copy or additional copies of the agreement, containing the missing signatures.

The statute can be read to mean that if the taxpayer substantially complies with the various requirements for election but has either left required information off the notice of election or omitted required signatures from the recapture agreement, the election nevertheless is valid. The question then would be whether the failure to file the recapture agreement with the return was consistent with substantial compliance. And failure it was. We cannot agree with the district judge that a letter in which Prussner's lawyer stated that he was *not* filing a recapture agreement can be regarded as a recapture agreement. That would be like regarding a letter in which the taxpayer explains why he is not filing a tax return as a tax return. Yet failure to file the recapture agreement is not fatal if the statute is read to permit substantial compliance (as distinct from requiring complete compliance) not only with the requirements for a valid election that are expressly made curable by sections 2032A(d)(3)(B)(i) and (ii), but with any of the other requirements for a valid election as well.

To this reading it can be objected that it leaves the key term in the statute, "substantially complies," completely undefined. An alternative reading is to confine permissible noncompliance to the specific instances made curable in subsections (B)(i) and (B)(ii). On this reading, Prussner's failure

to file a recapture agreement with the return was inexcusable, because it was not a form of noncompliance that the statute specifies can be cured within ninety days after the Internal Revenue Service notifies the taxpayer. The Treasury regulation defines a valid election as the filing of a return accompanied by a notice of election and a recapture agreement, but does not deal with the case in which the notice or the agreement is defective. The Internal Revenue Service had taken the hard line that any defect invalidated the election. Congress responded with section 2032A(d)(3), reversing the hard line. But a notice and an agreement still must be filed with the return, and the agreement was not filed with the return here.

This interpretation may seem to have the weird consequence that while a failure to supply essential information is forgivable for up to ninety days after the Internal Revenue Service discovers the omission and notifies the taxpayer, the filing of a completely executed recapture agreement one day late is unforgivable. This dichotomy is misleading. Subsections (B)(i) and (B)(ii) are qualified, as we shall see, by a duty of substantial compliance with the requirements from which the subsections give relief. The taxpayer cannot file a notice of election (or a recapture agreement) that is blank except for the title and still obtain the benefit of the statute. Substantial compliance is always required; the question is whether it always excuses.

■ There are further differences between day-late filing and incomplete filing. All fixed deadlines seem harsh because all can be missed by a whisker—by a day (*United States v. Locke,* 471 U.S. 84, 105 S.Ct. 1785, 85 L.Ed.2d 64 (1985)) or for that matter by an hour or a minute. They are arbitrary by nature. The taxpayer in this case missed by four months, and that is the proper comparison to the (curable) case of an incomplete return. The legal system lives on fixed deadlines; their occasional harshness is redeemed by the clarity which they impart to legal obligation. "Deadlines are inherently arbitrary; fixed dates, however, are often essential to accomplish nec-

essary results. The Government has millions of taxpayers to monitor, and our system of self-assessment in the initial calculation of a tax simply cannot work on any basis other than one of strict filing standards." *United States v. Boyle*, 469 U.S. 241, 249, 105 S.Ct. 687, 691, 83 L.Ed.2d 622 (1985) (upholding penalty for late filing of estate tax return). There is no general judicial power to relieve from deadlines fixed by legislatures or, as here, by agencies exercising legislative-type powers. "To extend the time [for filing an amended return] beyond the limits prescribed in the Act is a legislative not a judicial function." *J.E. Riley Investment Co. v. Commissioner*, 311 U.S. 55, 59, 61 S.Ct. 95, 97, 85 L.Ed. 36 (1940).

A taxpayer may have difficulty obtaining the information necessary to file a complete notice of election, or the signatures necessary to file a completely executed recapture agreement, before the deadline for filing the estate tax return and hence for making the election for qualified-use valuation has passed. Section 2032A(d)(3) gives him more time (a lot more—ninety days after the Internal Revenue Service calls the omission to his attention). There is no comparable excuse for failing to file even an *incomplete* recapture agreement. Some of the interested parties in this case live in Illinois, where the estate tax return and the notice of election were prepared. Prussner's lawyer could have obtained some of the signatures, and if he had done so and had filed an incomplete agreement Prussner would have had the protection of the statute—at least if the Illinois beneficiaries were the principal ones. This qualification is important because the requirement of *substantial* compliance is not satisfied by filing an agreement signed by one contingent remainder-man, the main beneficiaries being left off. *McDonald v. Commissioner, supra*, 853 F.2d at 1497; cf. H.R.Conf.Rep. No. 861, 98th Cong., 2d Sess. 1241 (1984). That would make a joke of the statute by validating the election of a taxpayer who willfully flouted the requirements for a valid election. No matter; Prussner's lawyer could easily have obtained an extension of time for filing the estate tax return. He neither sought an extension of time nor filed an incomplete recapture agreement with the return; he failed to file a recapture agreement with the return, period. For this default the statute provides, as the Eighth Circuit has also concluded, no absolution.

This is true we think even if the alternative interpretation of the statute is correct, under which any insubstantial default may be excused even if it is not the type of default that subsections (B)(i) and (B)(ii) expressly make curable. Our earlier suggestion that this would leave the key statutory concept of substantial compliance completely undefined was imprecise. The Tax Court has created a general doctrine of substantial compliance with requirements for electing favorable tax treatment, *American Air Filter Co. v. Commissioner*, 81 T.C. 709, 719–20 (1983), and the courts of appeals have assumed the validity of this federal common law doctrine, although without exploring its foundations or justifications. *Atlantic Veneer Corp. v. Commissioner*, 812 F.2d 158, 161 (4th Cir. 1987); *Young v. Commissioner*, 783 F.2d 1201, 1205 (5th Cir.1986); *Knight–Ridder Newspapers, Inc. v. United States*, 743 F.2d 781, 794–97 (11th Cir.1984); cf. *United States v. Van Keppel*, 321 F.2d 717, 720 (10th Cir.1963). The doctrine might supply a meaning for substantial compliance in section 2032A(d)(3). This approach merges Prussner's common law argument for substantial compliance into her statutory argument. Since she does not argue that the statutory concept differs from the common law concept, we need not consider them separately.

The Tax Court has at times articulated the doctrine of substantial compliance in most liberal terms, notably but not only in the *American Air Filter* case, where the court sketched a five-factor test that emphasizes the harm that lack of full compliance causes the Internal Revenue Service; three of the five factors ring changes on that theme. Prussner's four-month delay in filing the recapture agreement did no harm to the IRS. As Chief Judge Baker's

opinion illustrates, district courts have been even more liberal than the Tax Court in excusing the substantially complying taxpayer faced with forfeiture. *Van Keppel v. United States*, 206 F.Supp. 42 (D.Kan. 1962), aff'd, 321 F.2d 717 (10th Cir.1963); *Pearce v. United States*, 226 F.Supp. 702 (W.D.N.Y.1964). A number of Tax Court cases, on the other hand, emphasize that there is no defense of substantial compliance for failure to comply with "essential requirements." *Hewlett–Packard Co. v. Commissioner*, 67 T.C. 736, 748 (1977). The distinction between essential and inessential, such as it is, is "explained" at length, but not clarified, in *Sperapani v. Commissioner*, 42 T.C. 308, 332–34 (1964). The five factors of *American Air Filter* could be thought a method of distinguishing them; the requirements the omission of which harms the Internal Revenue Service could be thought the essential ones. Yet among other relevant considerations listed in *American Air Filter* besides harm to the Internal Revenue Service are the specificity of the requirement that the taxpayer failed to comply with and the appropriateness of forfeiture as a sanction for his default. These factors are linked in that the more innocent, the more excusable, the default is, the less suitable is a harsh sanction, for it is a general principle of law that the severity of the sanction should be tailored to that of the wrong being punished. *Okaw Drainage District v. National Distillers & Chemical Corp.*, 882 F.2d 1241, 1248 (7th Cir.1989). But the two factors have nothing to do with essentiality.

Multifactored tests can be difficult to apply. *Secon Service System, Inc. v. St. Joseph Bank & Trust Co.*, 855 F.2d 406, 414 (7th Cir.1988); *Stevens v. Tillman*, 855 F.2d 394, 399–400 (7th Cir.1988); *Van Boxel v. Journal Co. Employees' Pension Trust*, 836 F.2d 1048, 1054 (7th Cir.1987); *Palmer v. City of Chicago*, 806 F.2d 1316, 1318 (7th Cir.1986); *Secretary of Labor v. Lauritzen*, 835 F.2d 1529, 1539–45 (7th Cir. 1987) (concurring opinion); *Piper Aircraft Corp. v. Wage–Aero, Inc.*, 741 F.2d 925, 938 (7th Cir.1984) (concurring opinion). The Tax Court's doctrine of substantial compliance is a case in point. The court

has classified the requirement of filing the recapture agreement with the estate tax return on the essential side of the ledger but has not been able to explain in other than conclusional terms the difference between this requirement and the requirements for other elections in the Internal Revenue Code. *Estate of Gunland, supra*, 88 T.C. at 1458–59. The distinction between "essential" (or "relating to substance or essence") on the one hand and "procedural" or "directory" on the other— an incomplete dichotomy that the Tax Court commonly uses to frame the issue of substantial compliance, *Dunavant v. Commissioner*, 63 T.C. 316, 319–20 (1974); *Taylor v. Commissioner*, 67 T.C. 1071, 1077– 78 (1977); *Tipps v. Commissioner*, 74 T.C. 458, 468 (1980)—is neither satisfactory on its own terms nor integrated with the five-factor test of *American Air Filter*.

Reading the Tax Court's decisions on the subject of substantial compliance is enough to make one's head swim. Tax lawyers can have no confidence concerning the circumstances in which noncompliance with regulations governing the election of favorable tax treatment will or will not work a forfeiture. The result has been a surge of unnecessary litigation well illustrated by the present suit. We think the doctrine should be interpreted narrowly, and point out that the courts of appeals owe no special deference to the Tax Court's legal views; indeed our review of its legal rulings is plenary. *Commissioner v. Hendrickson*, 873 F.2d 1018, 1022 (7th Cir. 1989); *Vukasovich, Inc. v. Commissioner*, 790 F.2d 1409, 1413 (9th Cir.1986). The common law doctrine of substantial compliance should not be allowed to spread beyond cases in which the taxpayer had a good excuse (though not a legal justification) for failing to comply with either an unimportant requirement or one unclearly or confusingly stated in the regulations or the statute. So conceived the doctrine is broader in scope, but less forgiving, than section 2032A(d)(3). It is not limited to the specific requirements made curable by subsections (B)(i) and (B)(ii), but there must be a showing that the requirement is either

unimportant or unclearly or confusingly stated; no such showing is required by those subsections.

We are not so critical as some of common law supplementation of the tax code and regulations. Compare *Yosha v. Commissioner*, 861 F.2d 494, 497–98 (7th Cir.1988), with Isenbergh, *Musings on Form and Substance in Taxation*, 49 U.Chi.L.Rev. 859 (1982). Intricate and interconnected as the statutory-regulatory pattern is, there are gaps for courts to fill. But a power of judicial supplementation should not be used to nullify valid regulations. In this case a regulation the validity of which is not challenged unequivocally required the filing of a recapture agreement *with* the return. The taxpayer's lawyer made no effort to comply, and given his alternative remedies—most simply, a request for an extension of time in which to file the return—he had no excuse for the failure. If the requirement that a recapture agreement be attached to the return is not essential, neither is it unimportant. The Internal Revenue Service cannot allow qualified-use valuation until a recapture agreement is filed, because as we said the statute makes the filing of such an agreement a condition of a valid election. Until it is filed, the return is in limbo. Failure to comply with the regulations may also create confusion about the irrevocability of the election. "Such an election, once made, shall be irrevocable." 26 U.S.C. § 2032A(d)(1). When is it made, if no recapture agreement is filed?

What remedies the estate might have against a lawyer who fails to comply with clear regulatory requirements, to the harm of the estate, we need not explore. *Boyle v. United States*, 710 F.2d 1251, 1256–58 (7th Cir.1983) (dissenting opinion), rev'd, 469 U.S. 241, 105 S.Ct. 687, 83 L.Ed.2d 622 (1985); *Greycas, Inc. v. Proud*, 826 F.2d 1560 (7th Cir.1987).

■ Although we do not think that Prussner has a good claim under section 2032A(d)(3) or the judicial doctrine of substantial compliance, we have yet to consider her claim under section 1421 of the Tax Reform Act of 1986. (The Eighth Circuit rejected a similar claim in both *Foss* and *McDonald*.) Subsection (a) of that statute provides:

in the case of any decedent dying before January 1, 1986, if the executor—

(1) made an election under § 2032A of the Internal Revenue Code of 1954 on the return of tax imposed by § 2001 of such Code [i.e., the estate tax return] within the time prescribed for filing such return (including extensions thereof), and

(2) provided substantially all the information with respect to such election required on such return of tax,

such election shall be a valid election for purposes of § 2032A of such Code.

Subsection (b) provides that "an election described in subsection (a) shall not be valid if the Secretary of the Treasury … requests information from the executor with respect to such election and the executor does not provide such information within 90 days of receipt of such request."

There is nothing about filing a recapture agreement or for that matter a notice of election. All that is required (in marked contrast to the Treasury regulation defining valid election for purposes of section 2032A) is the making of an election *on the estate tax return*—that is, the marking of the box for the election. The taxpayer who checks the box—that was done here—and provides substantially all the information that the return requires with respect to the election is home free.

■ The estate tax return filed by Prussner contained all, not substantially all, the *information* with respect to the election that the return required. The only information required to be included in the recapture agreement and not also in the notice of election is the designation of an agent to act for the heirs in dealings with the IRS. 26 C.F.R. § 20.2032A–8(c)(1). (The names and addresses of the heirs are required to be listed on the notice of election, and were here. Their social security numbers, also required, were omitted, but the government makes nothing of this omission.) But that information is not required on the return. So the failure to file the agreement with the return did not

make the information required on the return incomplete—and, even if it did, section 1421(a)(2) requires only that *substantially* all the information required on the return be included, not all of it. The agreement itself is not information, but commitment. And it is not "on" the return, but attached to it—unless "return" includes everything required to be filed with it. But the government does not argue that "return" is to be understood so broadly. (There is no general statutory definition of "return.")

The failure to file a recapture agreement could not be fatal *per se* to a claim under section 1421. The statute was intended precisely for the benefit of taxpayers who had failed to file an agreement. As the conference report (H.R.Conf.Rep. No. 841, 99th Cong., 2d Sess. II–770 to 771 (1986)) explains,

> The Senate amendment provides that estates of individuals dying before January 1, 1986, that substantially complied with the requirements enumerated on the Federal Estate Tax Return (as opposed to Treasury Department regulations) are allowed to perfect defective elections within 90 days of being notified of errors by the Treasury. Specifically, the March 1982 edition of Form 706, Federal Estate Tax Return, did not specify that the required agreement [the recapture agreement] had to be submitted with the estate tax return. This provision, therefore, permits late filing of the required agreements for estates that used the March 1982 edition of Form 706.

The report is in error. There was no March 1982 version of Form 706. It was the June 1982 version that failed to state that the recapture agreement had to be filed with the return, so it is to the June 1982 version that the report must intend to refer.

■ The government relies on the passage we have quoted from the conference report to argue that section 1421 is available only to users of the June 1982 form, because that is the only estate tax form which fails to specify that the recapture agreement must be filed with the return.

This argument confuses the occasion for a statute with its scope and meaning. We may assume that had it not been for the incomplete instructions on the June 1982 estate tax form, the statute would not have been passed. It does not follow that the users of that form are the only persons entitled to invoke the statute. Statutes are rarely so narrowly drafted; this one is not. If Congress had specified the "March 1982" form, the statute would be a complete hash.

The conference report provides at best equivocal support for the government's argument. The first sentence merely describes the Senate amendment, which the conference committee adopted. There is no suggestion that the amendment is confined to users of the June 1982 form. On the contrary, the amendment is described as applicable to decedents dying before January 1, 1986. No estate of a decedent who died in 1985 could be misled by the June 1982 estate tax form and instructions, because the form was changed for the estates of persons who died after January 1, 1985; yet the statute explicitly applies to the 1985 crop of decedents. The decedent in the present case died before the June 1982 form was in use; she died in 1981 and her executrix filed the estate's return on a January 1979 form. Yet the estate is within the protected class.

The report gives an example ("Specifically") of the operation of the amendment, and notes that, by virtue of the amendment ("therefore"), the estates that used the form can still elect special valuation under section 2032A. But the only hint that these might be the *only* estates failing to file a recapture agreement that are entitled nonetheless to elect such valuation is the reference in the first sentence to substantial compliance with "the requirements enumerated on the Federal Estate Tax Return (as opposed to Treasury Department regulations)." Other versions of the estate tax return besides that of June 1982, including the one filed by Prussner, did enumerate the requirement of filing the recapture agreement with the return.

Congress may not have known that the IRS had corrected the deficiency in the June 1982 form, or may have feared that other mistakes might creep into subsequent forms or might be buried in previous ones. Only the last of these concerns is plausible; if Congress had feared that the mistake either had not been corrected or might be repeated in subsequent estate tax forms, it would not have limited the statute's protections to the estates of persons who died before 1986. Still, Congress might have worried that the June 1982 form was not the only one that had omitted to direct the taxpayer to attach the recapture agreement; might not have been sure that it was the June 1982 form that was the offending form (far from being sure of this, Congress erroneously believed that the March 1982 form was the culprit); or might simply have used general wording to disguise the special-interest character of the legislation. This is common in tax statutes, a pertinent example being section 1421(d), which provides special relief for a single estate, identified not by the name of the decedent but by an elaborate periphrasis ("the estate of an individual who died on January 30, 1984, and with respect to which —(1) a Federal estate tax return was filed on October 30, 1984, electing current use valuation, and (2) the agreement required under section 2032A was filed on November 9, 1984"). Any of these reasons is sufficient to explain why the statute is drafted in general terms and to avoid the violent dislocation of statutory language that would be necessary to confine the protection of the statute to users of a single form nowhere mentioned in the statute and miscited in the only pertinent legislative history.

Alternatively, the government argues that in requiring the estate to have provided substantially all the information regarding the election "required on such return of tax," the statute requires the estate to comply substantially with all the *directions* on the return. This interpretation would avoid the anomaly of reading the statute to allow a valid election even if the taxpayer *never* files the recapture agreement. For failure to file a complete return there is the

remedy in section 1421(b): if the taxpayer fails to respond to the IRS's demand for the rest of the information within ninety days, the election is invalid. There is no similar provision with respect to failing to file the recapture agreement.

The suggested anomaly is a bogey, however. Section 2032A(a)(1)(B) requires as a condition to electing qualified-use valuation that "the executor elects the application of this section [2032A] *and files the agreement* referred to in subsection (d)(2) [the recapture agreement]" (emphasis added). We do not interpret section 1421 to have repealed this provision—and certainly the government does not argue that it did. All the statute does is to allow a valid election even if the agreement was not filed with the return. If the agreement is never filed, the estate is not entitled to qualified-use valuation and the Internal Revenue Service can assess a deficiency.

Even if (as we do not believe) the taxpayer could thumb his nose at the Service when it demanded the recapture agreement, this would not validate the government's interpretation. We know from the legislative history as well as the language of section 1421 that the statute is intended precisely for the benefit of taxpayers who failed to file the recapture agreement on time. The suggested anomaly is built into the statute. It would not be removed by interpreting the statute to require compliance with the directions on the return, since the June 1982 form, which the government itself considers the focus of the statute, contains no direction to file the agreement with the return.

Although the Form 706 on which Prussner filled out the estate's return directs the taxpayer electing qualified-use valuation to attach a recapture agreement, the form contains not the faintest suggestion that the failure to comply invalidates the election as distinct from the return. The trap for the unwary that the June 1982 form had sprung is not so well concealed on the January 1979 form, but it is concealed. It is as if failure to attach Schedule B (itemized deductions) to one's income tax return forever barred one from claiming the de-

ductions. Yet not too much weight can be placed on this point, since Congress limited section 1421 to the estates of persons who died before 1986, even though none of the versions of Form 706, so far as we are aware, warns the taxpayer of the consequences of failing to attach the recapture agreement to the return. The underlying difficulty, moreover, is in the statute itself, which by stating that "the election under this section shall be made on the return of the tax," fails to highlight the fact that the election is not valid unless additional documents are filed with the return. 26 U.S.C. § 2032A(d)(1).

The government's interpretation would read "information" in section 1421 to mean information *and* the recapture agreement, provided the return contained a direction to file the agreement with the return. Yet we recall that section 2032A(d)(3) distinguishes between "information" and "agreements," as does ordinary language. Effectively an amendment to the earlier section, section 1421 was intended to amplify the protection that the earlier section gave the noncomplying taxpayer. Different statutes passed by different Congresses often do use the same words to mean different things, but the word "information" will not comfortably bear such different meanings in two so closely related sections. In the end, all the government has going for it is a hint in a committee report, and that is not enough to persuade us to deform the statutory language and make these related statutes discordant. It is, after all, a statute we are interpreting, rather than a conference report. *In re Sinclair*, 870 F.2d 1340 (7th Cir.1989); *Green v. Bock Laundry Machine Co.*, — U.S. —, 109 S.Ct. 1981, 1995, 104 L.Ed.2d 557 (1989) (concurring opinion).

AFFIRMED.