T.C. Summary Opinion 2006-154

UNITED STATES TAX COURT

BRUCE K. AND MARINA V. NEY, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10257-05S.          Filed September 19, 2006.

Bruce K. and Marina V. Ney, pro sese.

<u>Roger W. Bracken</u>, for respondent.

PANUTHOS, <u>Chief Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

This matter is before the Court on the parties'
cross-motions for partial summary judgment pursuant to Rule
121(a).

Summary judgment is intended to expedite litigation and
avoid unnecessary and expensive trials.  Fla. Peach Corp. v.
Commissioner, 90 T.C. 678, 681 (1988).  Summary judgment may be
granted with respect to all or any part of the legal issues in
controversy "if the pleadings, answers to interrogatories,
depositions, admissions, and any other acceptable materials,
together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that a decision may be
rendered as a matter of law."  Rule 121(a) and (b); Sundstrand
Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965
(7th Cir. 1994); Naftel v. Commissioner, 85 T.C. 527, 529 (1985).
The moving party bears the burden of proving that there is no
genuine issue of material fact, and factual inferences will be
read in a manner most favorable to the party opposing summary
judgment.  Dahlstrom v. Commissioner, 85 T.C. 812, 821 (1985);
Jacklin v. Commissioner, 79 T.C. 340, 344 (1982).

The issue for decision is whether a claimed charitable
contribution deduction should be disallowed for failure to meet
the substantiation requirements under section 1.170A-13(c),
Income Tax Regs.  We are satisfied that there is no genuine issue
as to any material fact and that a decision may be rendered as a

matter of law. As explained in detail below, we shall grant respondent's motion for partial summary judgment and deny petitioners' motion for partial summary judgment.[1]

## Background

Petitioners owned two parcels of land in Felton, Delaware, which the parties refer to as Procko Farm and Webber Farm, respectively (collectively, the properties). In the late 1990s, petitioners contacted the Delaware Agricultural Lands Preservation Foundation (DALPF) about selling their development rights to the properties. DALPF is a State instrumentality that was established, in part, to prevent the conversion of Delaware's existing farmland to industrial or residential use. DALPF accomplishes this goal by purchasing development rights to agricultural lands. Landowners who sell their development rights retain title to their property, but they agree to use it solely for agriculture or related purposes.

At DALPF's request, the properties were appraised by Real Property Consultants, Inc. (RPC). RPC inspected both Procko Farm and Webber Farm in November 1999 and prepared an appraisal document for each property. RPC appraised the development rights to Procko Farm at $222,921 and the development rights to Webber

---

[1] In their motion for partial summary judgment, petitioners also seek to shift the burden of proof to respondent pursuant to sec. 7491(a). Because we render a decision as a matter of law, we decide the parties' motions without regard to the burden of proof.

Farm at $181,973. Each RPC appraisal document indicates an appraisal date of November 23, 1999, and states: "The purpose of this appraisal is to estimate the market value of the subject property's development rights in accordance with the Delaware Agricultural Lands Preservation Foundation." (Emphasis omitted.) Neither appraisal document states that it was prepared for income tax purposes.

In April 2000, petitioners commissioned a second company, Dover Consulting Services, Inc. (DCS), to appraise Webber Farm. DCS valued the Webber Farm development rights at $238,007 as of April 25, 2000. The appraisal document states that it was prepared to "[derive] the market value of the development rights of the property in accordance with the Delaware Agricultural Lands Preservation Foundation provisions, and for no other use." The appraisal document does not state that it was prepared for income tax purposes.[2] For convenience, we refer collectively to the RPC appraisals and the DCS appraisals as the 2000 appraisals.

On February 12, 2001, petitioners sold the development rights to Procko Farm to DALPF for $100,487.[3] On the same day, petitioners sold the development rights to Webber Farm to DALPF for $101,572.

---

[2] DCS did not appraise Procko Farm in 2000.

[3] All amounts are rounded to the nearest dollar.

Petitioners filed their joint 2001 Federal income tax return on April 15, 2002, reporting a noncash charitable contribution of $210,306.[4]  Attached to their return was a Form 8283, Noncash Charitable Contributions.  Form 8283 instructs the taxpayer to provide, inter alia, a description of the donated property, the date of its acquisition, and, if the property was sold in a "bargain sale", the amount the taxpayer received from the donee. Petitioners' Form 8283 describes the donated property as "Farmland" and lists the date of acquisition as "Various".  It does not identify the contribution as a bargain sale or indicate that petitioners received payment from DALPF.

Form 8283 includes a section titled "Donee Acknowledgment". This section instructs the donee to acknowledge that it is a qualified organization under section 170(c) and that it received the property in question.  Petitioners' Form 8283 was not signed by a representative of DALPF.

Form 8283 also includes a section titled "Declaration of Appraiser".  This section instructs the appraiser of the donated property to sign the following statement:

> I declare that I am not the donor, the donee, a party
> to the transaction in which the donor acquired the
> property, employed by, or related to any of the
> foregoing persons * * *.  And, if regularly used by the
> donor, donee, or party to the transaction, I performed

---

[4] Because petitioners reported adjusted gross income of $19,561, their claimed deduction was limited to $9,781.

the majority of my appraisals during my tax year for other persons.

Also, I declare that I hold myself out to the public as an appraiser or perform appraisals on a regular basis; and that because of my qualifications as described in the appraisal, I am qualified to make appraisals of the type of property being valued. * * * Furthermore, I understand that a false or fraudulent overstatement of the property value as described in the qualified appraisal or this * * * [Form 8283] may subject me to the penalty under section 6701(a) (aiding and abetting the understatement of tax liability). * * *

The Form 8283 attached to petitioners' tax return was not signed by an appraiser.

Respondent examined petitioners' 2001 tax return and sent petitioners an Information Document Request (IDR) in May 2004. The IDR requests a Form 8283 signed by the appraiser and the donee, as well as complete real estate appraisals for Procko Farm and Webber Farm. The IDR advises petitioners to "be sure that the appraisal reports that you submit are 'qualified appraisals' as defined in Treasury Regulation, Section 1.170A-13(c)(3)."

In July 2004, petitioners provided respondent with a separate Form 8283 for each of the properties. The Forms 8283 were signed by a representative of DALPF but were not signed by an appraiser. A letter from William Denman, an attorney for DALPF, explains that the appraisers from RPC were not willing to sign the Forms 8283.

Respondent issued petitioners a notice of deficiency in June 2005. Respondent disallowed in full the claimed deduction and

determined a $46,628 deficiency in petitioners' 2001 income tax. Petitioners filed a petition for review of respondent's determination. Petitioners resided in Magnolia, Delaware, when their petition was filed.

In November 2005, DCS prepared an additional appraisal document for each property (the 2005 appraisals). Each appraisal document states that it was prepared "for tax purposes" and to provide a "retrospective market value" of the subject property as of February 12, 2001. DCS appraised the development rights to Procko Farm at $180,000 and the development rights to Webber Farm at $200,000. Petitioners provided respondent with copies of the appraisal documents in February 2006, along with a Form 8283 signed by Philip McGinnis, president of DCS.

## Discussion

Deductions are a matter of legislative grace and are allowed only as specifically provided by statute. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). In general, section 170(a) allows as a deduction any charitable contribution made within the taxable year.[5] A taxpayer who sells a property interest for less

___

[5] Sec. 170(f)(3) generally does not permit a deduction for a charitable gift of property consisting of less than the donor's entire interest in the property. Turner v. Commissioner, 126 T.C. 299, 311 (2006). An exception applies in the case of a "qualified conservation contribution." Sec. 170(f)(3)(B)(iii); see also sec. 170(h)(1) (defining qualified conservation
(continued...)

than fair market value (i.e., makes a "bargain sale") to a charity is typically entitled to a charitable contribution deduction equal to the difference between the fair market value of the property interest and the amount realized from the sale. See Stark v. Commissioner, 86 T.C. 243, 255-256 (1986); Musgrave v. Commissioner, T.C. Memo. 2000-285; sec. 1.170A-4(c)(2), Income Tax Regs.  A charitable contribution is allowed as a deduction, however, only if verified under regulations prescribed by the Secretary.  Sec. 170(a)(1); Stark v. Commissioner, supra at 256.

In 1984, Congress enacted section 155 of the Deficit Reduction Act of 1984 (DEFRA), Pub. L. 98-369, 98 Stat. 691. DEFRA section 155 instructs the Secretary to prescribe heightened substantiation requirements for certain noncash charitable contributions.  DEFRA section 155 provides that the regulations shall require the taxpayer:  (1) To obtain a qualified appraisal of the property; (2) to attach an appraisal summary to the tax return on which the deduction is claimed; and (3) to include on the tax return such additional information as the Secretary may prescribe.  DEFRA section 155 provides the following definitions:

_____

[5](...continued)
contribution).  Because we shall grant respondent's motion for partial summary judgment, we need not decide whether the sale of development rights to DALPF constitutes a qualified conservation contribution.

(3) Appraisal summary.--For purposes of this subsection, the appraisal summary shall be in such form and include such information as the Secretary prescribes by regulations.  Such summary shall be signed by the qualified appraiser preparing the qualified appraisal and shall contain the TIN of such appraiser.  Such summary shall be acknowledged by the donee of the property appraised in such manner as the Secretary prescribes in such regulations.

(4) Qualified appraisal.--The term "qualified appraisal" means an appraisal prepared by a qualified appraiser which includes--
   (A) a description of the property appraised,
   (B) the fair market value of such property on the date of contribution and the specific basis for the valuation,
   (C) a statement that such appraisal was prepared for income tax purposes,
   (D) the qualifications of the qualified appraiser,
   (E) the signature and TIN of such appraiser, and
   (F) such additional information as the Secretary prescribes in such regulations.

The principal objective of DEFRA section 155 was to allow the Commissioner to obtain sufficient return information in order to deal more effectively with the prevalent use of charitable contribution overvaluations.  Hewitt v. Commissioner, 109 T.C. 258, 265 (1997) (citing S. Comm. on Finance, Deficit Reduction Act of 1984, Explanation of Provisions Approved by the Committee on March 21, 1984, S. Prt. 98-169 (Vol. I), at 444-445 (S. Comm. Print 1984), and Staff of Joint Comm. on Taxation, General Explanation of the Revenue Provisions of the Deficit Reduction Act of 1984 (J. Comm. Print 1985)), affd. without published opinion 166 F.3d 332 (4th Cir. 1998).

I.  Substantiation Requirements

Pursuant to DEFRA section 155, the Secretary has prescribed regulations for taxpayers claiming deductions in excess of $5,000 for certain charitable contributions of property.  See generally sec. 1.170A-13(c), Income Tax Regs.  The regulations require the taxpayer, inter alia, to obtain a qualified appraisal and attach a fully completed appraisal summary to the tax return.  Sec. 1.170A-13(c)(2)(i), Income Tax Regs.  The regulations provide detailed definitions for the terms "qualified appraisal" and "appraisal summary", as well as for other pertinent terms.  We discuss only those portions of the definitions that are relevant to the parties' motions.

A.  Qualified Appraisal

A qualified appraisal is an appraisal document that:  (1) Relates to an appraisal that is made not earlier than 60 days before the date of contribution of the appraised property nor later than the due date of the return on which a deduction is first claimed; (2) is prepared, signed, and dated by a qualified appraiser; (3) includes a statement that the appraisal was prepared for income tax purposes; and (4) includes the appraised fair market value of the property on the date (or expected date) of contribution.  Sec. 1.170A-13(c)(3)(i)(A), (B), (ii)(G), (I), (iv)(B), Income Tax Regs.

B. <u>Qualified Appraiser</u>

A qualified appraiser is an individual who includes on the appraisal summary a declaration that: (1) The individual either holds himself or herself out to the public as an appraiser or performs appraisals regularly; (2) the appraiser is qualified to make appraisals of the type of property being valued; and (3) the appraiser understands that an intentionally false or fraudulent overstatement of the value of the property described in the qualified appraisal or appraisal summary may subject the appraiser to a civil penalty under section 6701 for aiding and abetting an understatement of tax liability. Sec. 1.170A-13(c)(5)(i)(A), (B), (D), Income Tax Regs. An individual is not a qualified appraiser if the individual is the donor, the donee, any person employed by the donor or donee, or an appraiser who is regularly used by the donor or donee and who does not perform most of his or her appraisals for other persons. Sec. 1.170A-13(c)(5)(iv)(A), (C), (D), (F), Income Tax Regs.

C. <u>Appraisal Summary</u>

An appraisal summary means a summary of a qualified appraisal that: (1) Is made on the form prescribed by the Internal Revenue Service (Form 8283); (2) is signed and dated by the qualified appraiser who prepared the qualified appraisal; (3) is signed and dated by the donee; and (4) includes the following information:

(B) A description of the property in sufficient detail for a person who is not generally familiar with the type of property to ascertain that the property that was appraised is the property that was contributed;

\* \* \* \* \* \* \*

(D) The manner of acquisition (e.g., purchase, exchange, gift, or bequest) and the date of acquisition of the property by the donor * * *;

\* \* \* \* \* \* \*

(H) For charitable contributions made after June 6, 1988, a statement explaining whether or not the charitable contribution was made by means of a bargain sale and the amount of any consideration received from the donee for the contribution;

(I) The name, address, and * * * the identifying number of the qualified appraiser who signs the appraisal summary * * *;

(J) The appraised fair market value of the property on the date of contribution;

(K) The declaration by the appraiser described in paragraph (c)(5)(i) of this section [regarding the imposition of a penalty under section 6701 for aiding and abetting an understatement of tax liability];

\* \* \* \* \* \* \*

(M) Such other information as may be specified by the form.

Sec. 1.170A-13(c)(4)(i) and (ii), Income Tax Regs.

II. Petitioners' Compliance With the Substantiation Requirements

A. Strict Compliance

Petitioners concede that they did not strictly comply with the substantiation requirements in the regulations. Indeed, the 2000 appraisals were made more than 60 days before the date of

contribution; they do not state that they were prepared for income tax purposes; and they do not appraise Procko Farm and Webber Farm on the date of contribution. See sec. 1.170A-13(c)(3)(i)(A), (G), (I), Income Tax Regs. In addition, petitioners concede that RPC was not a qualified appraiser because RPC was employed by DALPF. See sec. 1.170A-13(c)(5)(iv), Income Tax Regs.

With respect to the 2005 appraisals by DCS, the appraisal documents state that they were prepared "for tax purposes" and that they are valuing the properties as of the date of contribution. However, the appraisals were made more than 3 years after the due date of petitioners' tax return and therefore were not timely. See sec. 1.170A-13(c)(3)(i)(A), Income Tax Regs.

In addition to these defects, the Form 8283 attached to petitioners' tax return was not signed by an appraiser or by the donee; it does not list the date of acquisition for either property; and it does not state whether either contribution was made by means of a bargain sale or indicate that petitioners received payments from DALPF.[6] See sec. 1.170A-13(c)(4)(i) and (ii), Income Tax Regs.

_____

[6] In their motion for partial summary judgment, petitioners assert that the sale of development rights to DALPF was a bargain sale. Petitioners have not explained why they failed to describe it as such on the Form 8283, Noncash Charitable Contributions.

B.  Substantial Compliance

Having failed to strictly comply with the substantiation requirements, petitioners assert they are entitled to a deduction because they substantially complied with the regulations.

The doctrine of substantial compliance is designed to avoid hardship in cases where a party does all that can reasonably be expected of him, but he nonetheless has failed to comply with the requirements of a statutory provision.  Estate of Chamberlain v. Commissioner, T.C. Memo. 1999-181, affd. 9 Fed. Appx. 713 (9th Cir. 2001).  This Court has applied the substantial compliance doctrine and excused taxpayers from strict compliance with procedural regulatory requirements, provided that the taxpayers substantially complied by fulfilling the essential statutory purpose.  Id. (and cases cited therein).

Petitioners rely primarily on Bond v. Commissioner, 100 T.C. 32 (1993).  In Bond, the taxpayers contributed property that was appraised by a qualified appraiser within the specified period. The appraiser signed the Form 8283 and included on it nearly all of the information required in a qualified appraisal.  The appraiser did not prepare a separate appraisal document, however, nor did he list his qualifications on the Form 8283.  Id. at 34. Shortly after the Commissioner began examining the taxpayers' tax return, the appraiser provided the Government with a letter describing his qualifications in detail.  Id. at 34-35.  The

Commissioner nevertheless disallowed the claimed deduction because the taxpayers had failed to strictly comply with the requirements set forth in the regulations.  The taxpayers sought review in this Court.

To decide whether the doctrine of substantial compliance applied, the Court examined whether the requirements of the regulations are mandatory or directory with respect to the purpose of section 170.  Id. at 41.  We held that

> At the outset, it is apparent that the essence of
> section 170 is to allow certain taxpayers a charitable
> deduction for contributions made to certain
> organizations.  It is equally apparent that the
> reporting requirements of section 1.170A-13, Income Tax
> Regs., are helpful to respondent in the processing and
> auditing of returns on which charitable deductions are
> claimed.  However, the reporting requirements do not
> relate to the substance or essence of whether or not a
> charitable contribution was actually made.  We
> conclude, therefore, that the reporting requirements
> are directory and not mandatory. * * * [Id.]

The Court then concluded that because the taxpayers had provided substantially all of the information specified in the regulations, "The denial of a charitable deduction * * * would constitute a sanction which is not warranted or justified."  Id. at 42.  We noted, however, that Bond was not a case where the taxpayers failed to obtain a timely appraisal of the donated property and thereby failed to establish its value.  Id.

Petitioners argue that, like the taxpayers in Bond, they substantially complied with the regulations.  Denying them a

deduction for failure to strictly comply with the regulations would, petitioners believe, constitute an unwarranted sanction.

Respondent, in contrast, argues that petitioners did not substantially comply with the regulations. Respondent argues that Bond is distinguishable because petitioners failed to obtain a qualified appraisal. Respondent argues that petitioners' case is more factually similar to cases such as Hewitt v. Commissioner, 109 T.C. 258 (1997), and D'Arcangelo v. Commissioner, T.C. Memo. 1994-572.

In Hewitt, the taxpayers donated non-publicly traded stock. The taxpayers claimed a charitable contribution deduction and attached a Form 8283 to their tax return. The taxpayers did not have the stock appraised. Instead, they calculated the value of the stock on the basis of prices reflected in recent third-party trading activity. Hewitt v. Commissioner, supra at 259-260. The Commissioner did not dispute that the amount of the claimed deduction represented the fair market value of the contributed stock. Nevertheless, the Commissioner disallowed most of the claimed deduction because the taxpayers had not obtained a qualified appraisal. Id. at 262.

The Court held that the taxpayers had not substantially complied with the regulations. In distinguishing Bond v. Commissioner, supra, we noted that "the reporting requirements of section 1.170A-13, Income Tax Regs., were directory, not

mandatory," but "nothing in <u>Bond</u> * * * relieves * * * [the taxpayers] of the requirement of obtaining a qualified appraisal." <u>Hewitt v. Commissioner</u>, <u>supra</u> at 263-264. Although the value of the stock was not in dispute, the qualified appraisal requirement is imposed by DEFRA section 155. <u>Id.</u> at 264. The doctrine of substantial compliance could not excuse the taxpayers' failure to comply with that requirement. <u>Id.</u> at 265-266.

In <u>D'Arcangelo v. Commissioner</u>, <u>supra</u>, the taxpayers donated art supplies to a high school and claimed a charitable contribution deduction. The taxpayers attached a Form 8283 to their tax return along with a "letter of appraisal" from the high school principal. At trial, the taxpayers also introduced expert testimony concerning the value of the donated property.

The Court held that the taxpayers had failed to obtain a qualified appraisal and, therefore, had not substantially complied with the regulations. The principal was not a qualified appraiser because he was employed by the donee and did not regularly perform appraisals. The taxpayers' expert witness performed only a cursory inspection of the donated items several years before the date of contribution, and he was generally unfamiliar with the condition of the items as of that date. We stated that, unlike the taxpayers in <u>Bond</u>, the taxpayers "did not merely fail to attach evidence of a qualified appraisal, they

altogether failed to obtain a qualified appraisal." D'Arcangelo
v. Commissioner, supra.

Turning to the facts of the instant case, we agree with
respondent that petitioners did not substantially comply with the
regulations. For the reasons discussed supra, none of the
appraisals that petitioners obtained is a qualified appraisal.
Unlike the reporting requirements at issue in Bond, the qualified
appraisal requirement is mandatory, not merely directory. Our
caselaw is clear that we cannot apply the doctrine of substantial
compliance to excuse a taxpayer's failure to meet this
requirement. See, e.g., Hewitt v. Commissioner, supra at 264-
266; D'Arcangelo v. Commissioner, supra.

We also note that the requirements that the appraiser and
the donee sign the Form 8283 also appear to be mandatory. By
signing the appraiser's declaration, the appraiser potentially
subjects himself to a penalty under section 6701. This
requirement serves the purpose of DEFRA section 155 by
discouraging the overvaluation of charitable contributions. See
Hewitt v. Commissioner, supra at 265 (and the legislative history
cited thereat); see also Estate of Chamberlain v. Commissioner,
T.C. Memo. 1999-181 ("substantial compliance cannot be applied if
to do so would defeat the policies of the underlying statutory
provisions"). By signing the donee's acknowledgment, the donee
asserts that it is a charitable organization. This requirement

thus relates to "the substance or essence of whether or not a charitable contribution was actually made."  See Bond v. Commissioner, supra at 41.

Petitioners argue that the regulations provide relief for failure to comply with the substantiation requirements.  For example, the regulations provide that if it is impossible for the taxpayer to obtain the donee's signature on the appraisal summary, the taxpayer's deduction will not be disallowed provided the taxpayer attaches a statement to the appraisal summary explaining why it was not possible to obtain the donee's signature.  Sec. 1.170A-13(c)(4)(iv)(C)(2), Income Tax Regs. Petitioners have not asserted that it was impossible to obtain the donee's signature, however, nor did they attach an explanatory statement to the Form 8283.

The regulations also provide that if the taxpayer fails to attach the appraisal summary to the tax return, the Internal Revenue Service may request that the taxpayer submit the appraisal summary within 90 days of the request.  Sec. 1.170A-13(c)(4)(iv)(H), Income Tax Regs.  If such a request is made and the donor complies, a deduction will not be disallowed provided that, inter alia, the donor's failure to attach the appraisal summary was a good faith omission and a qualified appraisal was completed within the specified period.  Id.  Because petitioners

did not obtain a qualified appraisal within the specified period, however, this exception does not apply.

We conclude that petitioners did not substantially comply with section 1.170A-13(c), Income Tax Regs. Accordingly, petitioners are not entitled to a noncash charitable contribution deduction.

III. Petitioners' Remaining Arguments

Petitioners raise a number of additional arguments regarding the issue of substantial compliance, as well as other issues in their case. We address these arguments below.

A. Curing a Failure To Comply With the Regulations

Petitioners argue that, "taken as a whole", the documents they provided to respondent--including the 2005 appraisals-- satisfy the requirements of the regulations. Although petitioners did not obtain or provide all of the documents within the prescribed period, petitioners contend they should be allowed to cure any defects in the original appraisals and the appraisal summary. We disagree.

DEFRA section 155 provides that the appraisal summary must be attached to the taxpayer's tax return and signed by the qualified appraiser. See DEFRA sec. 155(a)(1)(B). Thus, the qualified appraisal and the appraisal summary must be completed no later than the due date of the tax return. As discussed supra, while the regulations provide limited relief from certain

timing requirements, those provisions are inapplicable to petitioners' case. Nothing in DEFRA section 155 indicates that taxpayers are otherwise allowed to cure a failure to comply with the timing requirements.

B. Equitable Considerations

Petitioners argue that denying them a deduction would be inequitable. Petitioners contend they donated something of value to DALPF and should not be denied a deduction for failing to comply with an arbitrary deadline.

We note, first, that we are not a court of equity and do not possess general equitable powers. Stovall v. Commissioner, 101 T.C. 140, 149-150 (1993); Knight v. Commissioner, T.C. Memo. 1998-107. "'There is no general judicial power to relieve from deadlines fixed by legislatures'". Dirks v. Commissioner, T.C. Memo. 2004-138 (quoting Prussner v. United States, 896 F.2d 218, 223 (7th Cir. 1990)), affd. 154 Fed. Appx. 614 (9th Cir. 2005).

Second, "'deadlines, like statutes of limitations, necessarily operate harshly and arbitrarily with respect to individuals who fall just on the other side of them'". Dirks v. Commissioner, supra (quoting United States v. Locke, 471 U.S. 84, 101 (1985)). Nevertheless, "'The legal system lives on fixed deadlines; their occasional harshness is redeemed by the clarity which they impart to legal obligation.'" Id. (quoting Prussner v. United States, supra at 222).

Furthermore, we note that petitioners had approximately 16 months in which to obtain a qualified appraisal.[7] Petitioners have not explained why they were unable to secure a qualified appraisal within that period. Nor did petitioners "'fall just on the other side'" of the deadline. See id. The 2000 appraisals were made more than 9 months before the date of contribution. The 2005 appraisals were made more than 3 years after the due date of petitioners' tax return. Thus, we are not faced with a situation where the taxpayer has done "all that can reasonably be expected of him". See Estate of Chamberlain v. Commissioner, T.C. Memo. 1999-181.

Third, as mentioned supra, DEFRA section 155 is not primarily concerned with whether a charitable contribution has been made. Hewitt v. Commissioner, 109 T.C. at 265. Rather, DEFRA section 155 is concerned with substantiating the value of the contributed property. Id. Thus, even if petitioners made a charitable contribution, they must meet the substantiation requirements to claim a deduction.

C. Respondent's Alleged Wrongdoing

Petitioners allege that respondent acted improperly during the examination of their tax return. We need not address

---

[7] Petitioners sold their development rights on Feb. 12, 2001. Sixty days before that date is Dec. 14, 2000. Petitioners had from that time until the due date of their tax return on Apr. 15, 2002, to obtain a qualified appraisal. See sec. 1.170A-13(c)(3)(i)(A), (iv)(B), Income Tax Regs.

petitioners' contentions at this time.  Suffice it to say the issue before us is whether petitioners complied with the substantiation requirements of the regulations.  Petitioners' allegations, even if they are true, do not affect the resolution of this issue.

D.  The Gain From the Sale of the Development Rights

Finally, in the notice of deficiency respondent determined an unreported capital gain of $96,420 resulting from the sale of petitioners' development rights.  Although petitioners assert that no gain resulted from the sale, they have failed to prove that the material facts are not in dispute.  Accordingly, this issue is not appropriate for summary judgment.  See Rule 121(a) and (b); Naftel v. Commissioner, 85 T.C. at 529.

Conclusion

We conclude that petitioners did not comply with the regulations and, therefore, are not entitled to a noncash charitable contribution deduction.  In reaching our holding, we have considered all arguments made, and, to the extent not mentioned, we conclude that they are moot, irrelevant, or without merit.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

An appropriate order will be issued.